238 Ind. 646 (1958)
150 N.E.2d 891
GENERAL TELEPHONE COMPANY OF INDIANA, INC.
v.
PUBLIC SERVICE COMMISSION OF INDIANA ET AL.
No. 29,547.
Supreme Court of Indiana.
Filed June 12, 1958.
Rehearing denied November 24, 1958.
*647 Michael T. Ricks, John F. Bodle, Stuart, Devol, Branigin & Ricks, of counsel, all of Lafayette, and Hickam & Hickam, of counsel, of Spencer, for appellant.
Edwin K. Steers, Attorney General and Arthur H. Gemmer, Deputy Attorney General, for appellee Public Service Commission.
*648 John O. Moomaw and James B. Sparks, of Bloomfield, for appellee Clay County Rural Telephone Co-Operative, Inc.
Lloyd C. Wampler, of Plymouth, for appellee Citizens Telephone Improvement Committee and Telephone Subscribers.
EMMERT, J.
This is an appeal from a judgment denying relief to appellant, entered on a general finding made by the trial court in an action to review an order of the Public Service Commission of Indiana which granted a certificate of territorial authority to the Clay County Rural Telephone Co-Operative, Inc., hereafter referred to as Co-Op, for the territory comprised by the exchanges of Cloverdale, Putnamville and Eminence, as shown by a certain map filed with the Commission by Indiana Midland Telephone Corporation. The territorial certificate was granted on the condition that Co-Op "shall, within a reasonable time, secure a loan from the Rural Electrification Administration for the construction and operation of modern telephone facilities in the territory...." The same order denied a joint petition by appellant and Indiana Midland Telephone Corporation, which will be discussed in detail hereinafter. The action to review was brought under the general statute for review of decisions, rulings, orders, determinations, requirements or directions of the Public Service Commission as provided by ch. 169 of the 1929 Acts (§§ 54-429 to 54-438, Burns' 1951 Replacement).[1] The error assigned is the overruling of appellant's motion for a new trial.
There was no requirement that appellant General Telephone Company of Indiana, Inc., hereafter referred *649 to as General, file any petition for rehearing before the Commission before it commenced its action to review the order of the Commission. Section 54-430, Burns', does not require such a rehearing, although it does fix the time within which such action can be brought if a petition for rehearing be filed. "The act under consideration does not require that a motion for a rehearing should be filed and passed on by the commission as condition precedent to the right of the aggrieved party to resort to the courts for relief." Greensburg Water Co. v. Lewis (1920), 189 Ind. 439, 445, 128 N.E. 103.
On July 8, 1954, the Commission had declared the territory served by the Indiana Midland Telephone Corporation, hereafter referred to as Midland, in the Cloverdale, Eminence and Putnamville exchange areas, to be "open territory," under ch. 158 of the 1951 Acts which amended the general public utility act of 1913, ch. 76, by adding a new section to such basic Act, number 97(b), § 54-601(b), Burns'. Midland had commenced an action to review this order in the Morgan Circuit Court, which was yet pending when the action to review at bar was tried in the Owen Circuit Court.
Appellant insists the action to review the order of the Commission declaring the area "open territory" suspended the right of the Commission to grant a certificate of territorial authority to Co-Op. We fail to find anything in the statutes so providing. The appeal did not vacate the order of the Commission. State ex rel. Pollard v. Sup. Ct. of Mar. Co. (1954), 233 Ind. 667, 677, 122 N.E.2d 612. We think this was the holding in Terre Haute Gas Corporation v. Johnson (1942), 221 Ind. 499, 515, 45 N.E.2d 484, where pending appeal of an action to review an order of the Commission approving an *650 option of sale, the sale was consummated by the Indiana Gas Utilities Company to Terre Haute Gas Corporation. The court said, "appellants acted at their peril since they were bound to know that the judgment might relate to the time when the action was begun." If the Commission had granted General's petition to approve the sale and granted it a certificate of authority for the area, this would have made the action to review in the Morgan Circuit Court moot. As a matter of administrative policy it may have been wise for the Commission to have deferred action until the "open territory" order was finally determined, but the action to review did not deprive the Commission of jurisdiction to proceed to grant a certificate of territorial authority for the area involved in the action in the Morgan Circuit Court.
On June 30, 1955, General and Midland signed an agreement for the sale by Midland of all of its real estate, buildings, improvements, personal property, franchises, easements, indeterminate permits and Certificates of Territorial Authority used in connection with Midland's exchanges at Cloverdale, Putnamville and Eminence, including all physical telephone plants in service, switchboards, poles, lines, wires, guys, conduits, cable, telephones and all other property used in connection therewith, "EXCEPT, accounts receivable and such materials, supplies and cash as may be on hand on the transfer date" to General for the sum of $76,000. Item II of the contract provided:
"This Agreement and sale is subject to these conditions: First, that this Agreement and sale be approved by the Public Service Commission of Indiana, and second, that the Public Service Commission of Indiana approve the issuance to General Telephone, by assignment or otherwise, of satisfactory Certificates of Territorial Authority for the telephone exchange areas above described."
*651 On July 8, 1955, General and Midland filed a joint petition for approval of this contract and the issuance of a Certificate of Territorial Authority to General. The petitioners sought approval of the sale under § 54-510, Burns'. The only statutory authority for the Commission issuing a Certificate of Territorial Authority for a telephone utility is contained in § 54-601(b), Burns' (§ 1, ch. 158, 1951 Acts). Appellant in its complaint to review the order asserted this is unconstitutional and in violation of § 1 of Article 3 and § 1 of Article 4 of the Constitution of Indiana in certain particulars not necessary to state in this opinion. When appellant sought to obtain a Certificate of Territorial Authority under this section it estopped itself from thereafter claiming in the same proceeding that the section was unconstitutional. Buck v. Kuykendall (1925), 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286.[2] The action to review was a continuation of the proceeding before the Commission. Public Service Comm. v. Indiana Telephone Corp. (1957), 237 Ind. 352, 146 N.E.2d 248.
When the power of the Public Service Commission comes in question it must be recognized it is a statutory board which "derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded that there is none." Chicago & E.I.R. Co. v. Public Service Comm. (1943), 221 Ind. 592, 594, 49 N.E.2d 341.
The allocation of a utility service area is a legislative *652 function. The General Assembly by § 54-601 (b), Burns', delegated that function to the Commission. The second paragraph of subsection (b) provides:
"After the issuance of such certificate no other telephone company shall render telephone service in the area or areas so determined and defined, except pursuant to a certificate granted by the commission, after notice of hearing and hearing, that public convenience and necessity require that telephone service in any such area be rendered or offered by another company...."
It is conceded that there had been a territorial certificate issued to Midland. If possible, the Act should be construed to bring it within constitutional limitations. Public Service Comm. v. City of LaPorte (1935), 207 Ind. 462, 465, 193 N.E. 668. Clearly, after a certificate is revoked under subsection (b) the issuance of another certificate was authorized for public convenience and necessity after notice and hearing under the quoted portion of subsection (b). Since notice and a hearing are mandatory, the prescribed standard of public convenience and necessity are sufficient. Schechter v. United States (1935), 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. Moreover § 7 of the 1913 Act as amended, § 54-201, Burns', which requires every public utility "to furnish reasonably adequate service and facilities" is to be construed in pari materia with § 54-601(b), Burns', in furnishing an additional standard for the guidance of the Commission.
However, the issue still remains as to whether the Commission exercised its statutory authority in the required manner by basing the order "upon the facts impartially found by it." Section 54-112, Burns'. Appellant insists the findings are insufficient to sustain the order, and with this we agree. Since the decision in Kosciusko County, etc. v. *653 Public Service Comm. (1948), 225 Ind. 666, 77 N.E.2d 572, we have repeatedly held there must be specific findings of ultimate facts to sustain the order. "The Public Service Commission should find the ultimate facts specifically and not generally. The findings of fact must be specific enough to enable the court to review intelligently the Commission's decision." Wabash Valley Coach Co. v. Arrow Coach Lines (1950), 228 Ind. 609, 613, 94 N.E.2d 753. As noted by the Supreme Court of the United States in Atchison, T. & S.F.R. Co. v. United States (1935), 295 U.S. 193, 202, 55 S.Ct. 748, 752, 79 L.Ed. 1382, 1390, the findings should state the "essential basic facts."
The joint petition by General and Midland was consolidated for hearing with the petition by Co-Op. General offered testimony as to its experience in the telephone business, its personnel, financial responsibility, its plan for rehabilitation and improvements of the area, when the rehabilitation would be completed, the kind of service it would furnish, which included the installation of dial phones, although not so stated in its petition and the written agreement it had with Midland for the purchase of its business. This evidence was uncontradicted and unimpeached, and the Commission was not at liberty to disregard such evidence and make no special findings upon it. Co-Op was not authorized by its articles of incorporation to furnish any telephone service in Morgan County, into which part of Midland's service extended. The evidence was uncontradicted that Co-Op had never been in the telephone business, and that it had no trained personnel, but no finding was made on this. There was no finding made as to when Co-Op would be able to complete its rehabilitation of the system it sought to purchase. There was no finding made *654 as to whether or not the agreed price with Midland for the sale to General in the sum of $76,000 was a fair and reasonable price. The finding as to the lower rates to be charged by Co-Op was too general to permit this court as a court of review to intelligently judge whether this was based upon substantial evidence. The findings were so defective that the order based thereon was void. See Public Service Comm. v. Indiana Telephone Corp. (1957), 237 Ind. 352, 146 N.E.2d 248, supra.
Other asserted errors may not arise after the matter is remanded to the Commission. In view of the reversal of the judgment appellees' assignment of cross-errors becomes moot.[3]
Judgment reversed with instructions to the trial court to enter a judgment vacating the order of the Commission, and to remand the proceedings to it for further proceedings consistent with this opinion.
Bobbitt, C.J., Landis, Achor and Arterburn, JJ., concur.

ON PETITION FOR REHEARING
EMMERT, J.
Appellees' petition for rehearing calls our attention to an error of fact stated in the first opinion. We assumed there had been a territorial certificate issued to Midland. This error was induced by the failure of the briefs to include in the statement of the record the fact no such certificate had been issued to Midland, and the presumption indulged by this court that the Commission had acted within its statutory authority under § 54-601(b), Burns' 1951 Replacement (Supp.).[1]
*655 This amendment to the Shively-Spencer Utility Commission Act of 1913 (ch. 76 of the 1913 Acts) is hardly a work of art in the field of statutory draftsmanship, due to its lack of clarity, and it would unduly extend this opinion to set forth the amendment verbatim.
In construing the Act the law is well settled, as we noted in the original opinion, that the Public Service Commission "derives its power and authority solely from the statute, and unless a grant of power and authority can be found in the statute it must be concluded that there is none." Chicago & E.I.R. Co. v. Public Service Commission (1943), 221 Ind. 592, 594, 49 N.E.2d 341.[2] Section 54-601(b) clearly distinguishes between a territorial certificate issued pursuant to the Act, and a municipal franchise or any indeterminate permit.[3]
Under subsection (b) of § 54-601(b), Burns', the Commission is not granted authority to issue a territorial certificate upon a voluntary report for area already being served by a utility, for the Act of 1951 governing the issuance of a certificate on a voluntary report states:

*656 "... The commission shall have the power to issue to each such company for any territorial area or areas so reported and not covered by a municipal franchise or any indeterminate permit, a certificate of territorial authority. The certificate shall determine and define the area or areas in which each such company shall thereafter render telephone service....
"After the issuance of such certificate no other telephone company shall render telephone service in the area or areas so determined and defined, except pursuant to a certificate granted by the commission, after notice of hearing and hearing, that public convenience and necessity require that telephone service in any such area be rendered or offered by another company. Any telephone company, without a prior order by the commission, may voluntarily file with the commission a report of the territorial area or areas and the boundaries thereof within the state in which it renders, is reasonably prepared to render, and proposes to render telephone service within a reasonable time. Upon the filing of such voluntary report the commission shall have the power to issue its certificate of territorial authority to such company in like manner and with like effect as if such report had been required by order of the commission as hereinabove provided for in this section.

"Nothing contained herein or in any such certificate shall be construed to require any telephone company to cease rendering any telephone service in any territorial area being served by such telephone company prior to the issuance of such certificate or to require any telephone company to render telephone service in any portion of any territorial area in which such telephone company does not render and does not propose to render telephone service." (Italics added.) Acts 1951, ch. 158, pp. 410, 411.
When the Commission declared the area served by Midland to be "open territory" it did not use any term we can find employed in the "Public Service Commission Act," as the Shively-Spencer Act is now known. The only possible authority for using the term is contained *657 in subsection (d) of § 54-601(b), Burns', which is limited to cases where a certificate of territorial authority had been issued, as appears from the following:
"(d) Any certificate of territorial authority may, after notice of hearing and a hearing, be revoked by the commission, in whole or in part, for the failure of the holder thereof to furnish reasonably adequate telephone service within the area or areas determined and defined in such certificate of territorial authority."
This is quite a different thing from the revocation of an indeterminate permit for cause as provided by § 54-604 and § 54-606, Burns' 1951.
Upon a re-examination of § 54-510, Burns', we are not impressed with appellees' contention it is inapplicable to the proceedings by General to purchase Midland's real estate, buildings, improvements, personal property, franchise, easements, indeterminate permits, etc. There was no attempt by General and Midland to merge or consolidate.[4] To sustain appellees' contention would result in an absurdity and void the clear statutory provision authorizing a sale or lease of the used and useful property, plant or business of a utility.
We find no merit in other contentions presented in appellees' petition for rehearing.
Petition denied.
Landis, C.J., Bobbitt, Achor and Arterburn, JJ., concur.
NOTE.  Reported in 150 N.E.2d 891.
Rehearing denied 154 N.E.2d 372.
NOTES
[1] All statutory references to the Burns' Revised Statutes are to the 1951 Replacement or 1951 Replacement (Supp.).
[2] "It is true that one cannot, in the same proceeding, both assail a statute and rely upon it. Hurley v Commission of Fisheries, 257 U.S. 223, 225, 66 L.Ed. 206, 207, 42 Sup. Ct. Rep. 83. Compare Wall v. Parrot Silver & Copper Co., 244 U.S. 407, 411, 61 L.Ed. 1229, 1230, 37 Sup. Ct. Rep. 609." Buck v. Kuykendall (1925), 267 U.S. 307, 316, 45 S.Ct. 324, 69 L.Ed. 623, 627, 38 A.L.R. 286.
[3] The trial court had entered an order staying and suspending its judgment pending the appeal.
[1] All citations to Burns' are either to 1951 Replacement or its Supplement.
[2] "The commission was unknown to the common law and possesses only such power as is conferred by statute. Wabash R. Co. v. Railroad Com., etc., supra, 438 [176 Ind. 428, 438, 95 N.E. 673]." State ex rel. Pub. Serv. Comm. v. Vandalia R. Co. (1915), 183 Ind. 49, 52, 108 N.E. 97.
[3] "The term `indeterminate permit' as used in this act shall mean and include every grant, directly or indirectly from the state to any corporation, company, ... of power, right or privilege to own, operate, manage or control any plant or equipment, within this state, ... for the furnishing of facilities for the transmission of intelligence by electricity between points within this state, which shall continue in force until such time as the municipality shall exercise its right to purchase, condemn, or otherwise acquire the property of such public utility, as provided in this act, or until it shall be otherwise terminated according to law. This act shall be commonly known and referred to as the `Public Service Commission Act.'" Chapter 313, Acts 1957, p. 916. (Italics added.)
[4] "Any two [2] or more corporations organized under, or which have accepted the provisions of, this act may merge into one [1] of such corporations, or may consolidate into a new corporation to be organized under this act, by complying with the provisions of this article." Section 25-230, Burns' 1948 Replacement.