C. Harvey BRADLEY, Jr., Ira Jennings and Benny R. Wilson, Appellants–Defendants,

v.

Robert H. BANKERT, Gregory T. Bankert, Jonathan W. Bankert, Jr., Cynthia A. Russell and Kathryn L. Bankert, Appellees–Plaintiffs,

v.

BOONE COUNTY AREA BOARD OF ZONING APPEALS, Boone County Area Plan Commission and Board of Commissioners of Boone County, Indiana, Respondents–Defendants.

No. 06A05–9209–CV–328.

Court of Appeals of Indiana, Fifth District.

June 22, 1993.

Rehearing Denied Aug. 16, 1993.

Lewis D. Beckwith, Harry F. McNaught, Jr., Andrew Z. Soshnick, Baker & Daniels, Indianapolis, for appellants-defendants.

Warren D. Krebs, Carol Sparks Drake, Parr Richey Obrembskey & Morton, Lebanon, for appellees-plaintiffs.

SHARPNACK, Chief Judge.

C. Harvey Bradley, Jr., Ira Jennings, and Benny R. Wilson ("Remonstrators") appeal from a trial court judgment which reversed a decision of the Board of Zoning Appeals and ordered the Executive Director of the Boone County Area Plan Commission to issue an improvement location permit to Robert H. Bankert, Gregory T. Bankert, Jr., Cynthia A. Russell and Kathryn L. Bankert ("Bankerts").

This case comes to us with a somewhat unusual procedural history. The case originated on March 6, 1991, when the Bankerts filed with the Boone County Area Plan Commission ("Commission") two separate applications for an improvement location permit to build a resource recovery system in a district zoned I–2 (industrial use). The applications and attachments described the proposed building but did not describe the use to which it was intended to be put beyond labeling it as a "resource recovery system."

The Boone County Zoning Ordinance ("Ordinance") divides the county into numerous zoning districts identified by the general types of uses permitted therein. In Table 1, the Ordinance lists specific uses in a vertical column and zoning districts in a horizontal column. The table identifies the districts in which specific uses are permitted by right with an "X" in the box under those districts. The table likewise identifies the districts in which specific uses are permitted only by special exception with an "S" in the box under those districts.

With regard to uses that are not specifically listed, section 3.0 of the Ordinance provides:

"[T]he Director [Executive Director of the Area Plan Commission] shall attempt to determine if the requested use is similar to a permitted use, following the provisions of Chapter 9 of the Ordinance. If the proposed use is determined to be similar to a permitted use, the permit shall be issued. If the Director determines that the use is not similar, then the application shall be denied. In case of

uncertainty, the Director may refer the request for clarification or classification to the Board for consideration in accordance with the provisions of Chapter 9." [1]

(Record, p. 190). Table 1 does not list a resource recovery system; however, it does list both a junkyard and a solid waste transfer station, the former of which is permitted by right, and the latter of which is permitted only by special exception. In addition, the Ordinance provides the following definitions:

"*Junkyard:* Any lot, parcel, or tract of real estate, platted or unplatted, at which personal property is or may be salvaged for reuse, resale or reduction or similar disposition and is owned, possessed, collected, accumulated, dismantled, or assorted...." (Record, p. 179).

"*Resource Recovery System:* A solid waste management system which provides for collection, separation, recycling, and recovery of solid and/or non-hazardous wastes including the disposal of non-recoverable waste residues." (Record, p. 182).

"*Solid Waste:* Garbage; refuse; sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility; and other discarded materials including solid, liquid, semi-solid, or contained gaseous material ... but does not include solid or dissolved materials in domestic sewage, hazardous wastes or nuclear wastes." (Record, p. 183).

"*Solid Waste Transfer Station:* A facility for the collection, separation, compaction, processing and storage of solid waste until said waste can be transported or transferred to a sanitary landfill or other facility approved and licensed for the disposal of solid wastes by the State of Indiana." (*Id.*)

In support of their application, the Bankerts presented the Director with an opinion letter by their attorney, Warren Krebs, that suggested that a resource recovery system was similar to a junkyard and thus was a permitted use in the I–2 zoning district. The Director referred the question to the Commission. The Commission then decided to refer the question to the BZA.

The Director placed discussion of the Krebs opinion letter as well as the legal opinion of Harry McNaught, Jr., attorney for Remonstrators, on the agenda for the BZA's May 22 meeting. Counsel for the Bankerts appeared at the meeting but did not participate. McNaught did participate and described two facilities located outside the area covered by the Ordinance which were used for recycling and transfer of solid waste. McNaught represented that, during the preceding year, one of those facilities received over 67 million pounds of waste and only recovered 5½ million

---

1. Chapter 9 provides, in relevant part:

"9.6 Uses Not Listed. It is recognized that in the development of a Zoning Ordinance, not all uses of land can be listed, nor can all future uses be anticipated. A 'use' may have been omitted from the list of those specified as permissible in the various Districts established by this Ordinance, or questions may arise concerning words which are synonymous. In such instances the following procedures shall apply.

A. When classification of [a] use is appealed or referred to the Board, it shall be the duty of the Board to ascertain all pertinent facts concerning said use and set forth in writing its findings and the reasons for designating a specific classification for such use.

  1. Applicant shall file a request with the Area Plan commission for a decision by the Board. The Board may also initiate an application.

  2. The Board shall render a decision not less than 30 days after such application is made, and shall notify the applicant and any person requesting such notice of such decision.

B. *Findings*

  1. In classifying a use, the Board shall first make a finding that all of the following conditions exist:

    a. That investigations have disclosed that the subject use and its operations are compatible with the uses permitted in the District wherein it is proposed to be located;

    b. That the subject use is similar to one or more uses permitted in the District within which it is proposed to be located; and

    c. That the subject use will not cause substantial injury to the values of property in the neighborhood or District within which it is proposed to be located; and

    d. That the subject use will be so designed, located and operated that the public health, safety, and general welfare will be protected.

  2. [T]he Board shall classify such use as to permitting such use by right, or permitting such use subject to Special Exception."

pounds for recycling. He contrasted that with another facility that received only pre-sorted materials and stated that, as far as he could tell, the Bankerts proposed to operate a system that would take in an unsorted stream of solid waste and that some percentage of the waste would be shipped to other facilities.

The Director also presented a staff report he had prepared which indicated that a resource recovery system was not "technically the same thing as a solid waste transfer station." (Record, p. 635). In addition, the report indicated that the Ordinance allowed several more "intense" uses in the I-2 district, including a junkyard. (Record, p. 636)

On July 24, the BZA entered its decision classifying a resource recovery system as permitted by special exception in an I-2 district. The BZA supported its decision with specific findings as required by § 9.6 of the Ordinance. The BZA found that a resource recovery system should be classified as permitted by special exception for several reasons, including that such a facility might involve heavy truck traffic, might cause environmental pollution, etc. and might utilize different types of technology. Therefore, according to the BZA, a case-by-case analysis pursuant to the special exception procedure was necessary to ensure both that the property values of the neighborhood would be maintained and that the system would be designed, located and operated in such a way as to protect the public health, safety and welfare.

Furthermore, the BZA found that a resource recovery system is similar to a solid waste transfer station in that it would both receive and transfer solid waste and therefore potentially would generate a high volume of truck traffic similar to the traffic generated by a solid waste transfer station. A resource recovery system, reasoned the BZA, is dissimilar to a junkyard because the latter is a place for the salvaging of personal property, whereas the former deals with solid waste, much of which may not be recoverable.

The Bankerts applied to the trial court for a writ of certiorari to review the deci-sion of the BZA, which the court granted. The Bankerts also filed a complaint for declaratory judgment. Pursuant to motion, the trial court allowed Remonstrators to intervene. The court conducted a hearing on March 27, 1992, at which the parties were allowed to present evidence concerning procedural irregularities in the administrative decision and "supplemental evidence" pursuant to I.C. § 36–7–4–1009. The trial court entered judgment reversing the decision of the BZA and ordering the Director to issue the Bankerts an improvement location permit to construct and operate a resource recovery system on the property in question.

The court entered the following relevant findings and conclusions in support of its judgment:

"11. ... In the findings rendered to support [the BZA's] decision, the BZA found that a "Resource Recovery System" would generate a steady stream of heavy truck traffic and that, while truck traffic is typical of an industrial use, there is potential for a much greater volume of such traffic with the proposed use; that the residue of solid waste for transfer will constitute a significant percentage of the total volume of solid waste that initially entered the resource recovery facility; and that a Resource Recovery System would not recycle 'personal property' for reuse or resale. These findings are not supported by testimony or other evidence presented at the BZA meeting.

\*　　\*　　\*　　\*　　\*　　\*

*Conclusions of Law*

[1] Upon determining a Resource Recovery System was 'very similar to a Junkyard' the Executive Director should have issued Bankerts the requested improvement location permit to construct and operate a Resource Recovery System, per Section 3.0 of the ... Ordinance. His failure to do so was an unlawful action.

\*　　\*　　\*　　\*　　\*　　\*

3. The BZA is a quasi-judicial body and, as such, is designed to hear and determine appeals, IND CODE SECTION 36–7–4–918.1, not perform legislative functions. The BZA had no authority or jurisdiction to classify or to reclassify a use,

Resource Recovery System, which was already established in the ... Ordinance....

*   *   *   *   *   *

5. In construing the ... Ordinance, the issue is whether a use is prohibited, not whether it is permissible. Because the zoning ordinance does not require a special exception for Resource Recovery System, if the BZA had had jurisdiction to amend the ordinance, the BZA did not have legal authority to require the Bankerts to obtain a special exception to construct and operate a Resource Recovery System.... When the County Commissioners amended the ... Ordinance in 1986 to include definitions of both a Resource Recovery System and a solid Waste Transfer Station, but elected to require only a Solid Waste Transfer Station to obtain a special exception, they foreclosed imposing this requirement upon a Resource Recovery System."

(Record, pp. 558–570).

Remonstrators present five issues, of which we address only the following four dispositive restated issues:

1. Did the BZA exceed its statutory authority by acting in a quasi-legislative capacity?

2. Did the trial court err in its interpretation that a resource recovery system is permitted by right due to the fact that it is not specifically excluded from an I–2 district where the Ordinance provided specific guidance for its interpretation in instances where a proposed use is not listed in the use tables?

3. Did the trial court err in concluding that the Director's failure to issue a permit was unlawful where its conclusion was based upon a finding that a resource recovery system was similar to a junkyard?

4. Was there sufficient evidence of probative value to support BZA's findings?

■■■ We first address the trial court's findings and conclusions to the effect that the BZA acted outside of its power as a quasi-judicial body and usurped a function granted exclusively to the county commissioners. By way of general background, we set out the following. The legislature granted the county commissioners the exclusive power to enact or amend zoning ordinances. I.C. § 36–7–4–601 *et seq; Bryant v. Lake County Trust Co.* (1972), 152 Ind.App. 628, 284 N.E.2d 537, 540. Administrative agencies, such as the BZA, are created by the legislature, and their powers are strictly limited to those granted by their authorizing statute. *Van Allen v. State* (1984), Ind.App., 467 N.E.2d 1210, 1213. The Bankerts correctly assert that the BZA has been granted only quasi-judicial powers. *See* I.C. § 36–7–4–918.1 *et. seq.; Newman v. Spence* (1991), Ind.App., 565 N.E.2d 350, 355 (Boards of Zoning Appeals perform quasi-judicial function).

■■ Normally, the question of whether an agency has acted in a quasi-legislative manner as opposed to a quasi-judicial manner is determined by application of the following principles. Administrative rulemaking (quasi-legislative activity) is distinct from the performance of an adjudicatory function (quasi-judicial activity) in that the former "embraces an element of generality, operating upon a class of individuals or situations whereas an adjudication operates retrospectively upon events which occurred in the past." *Blinzinger v. Americana Healthcare Corp.* (1984), Ind.App., 466 N.E.2d 1371, 1375. Indiana Code §§ 4–21.5–1–9 and 14, though not directly applicable to agencies of less than statewide jurisdiction such as the BZA, also provide some general guidelines to distinguish between quasi-judicial and quasi-legislative actions:

"Sec. 9. 'Order' means an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons...."

"Sec. 14. 'Rule' means the whole or any part of an agency statement of general applicability that:

(1) has or is designed to have the effect of law; and

(2) implements, interprets, or prescribes:

(A) law or policy; or

(B) the organization, procedure, or practice requirements of an agency."

An argument may be made that the BZA acted in a quasi-legislative fashion because it "interpreted a law," and, pursuant to section 9.6(D) of the Ordinance, its interpretation could be used generally and prospectively. However, the better view of the BZA's action is that the BZA interpreted the Ordinance to resolve an existing controversy—the Bankert's application for an improvement location permit—and its interpretation had the effect of determining the legal rights of specific persons. The BZA simply followed rules outlined in the Ordinance governing its interpretation in cases where uncontemplated uses are presented. What the BZA did was analogous to what a court does when it attempts to give effect to a statute's underlying purpose when presented with specific questions that were not contemplated when the statute was enacted. *See In re Lawrance* (1991), Ind., 579 N.E.2d 32, 38 (objective in statutory interpretation is to determine and effect the intent of the legislature); *see also Waldron Health Care Home v. Magnant* (1991), Ind.App., 575 N.E.2d 343, 347 (state welfare board did not need to promulgate additional rule when interpreting existing rule; the latter provided ascertainable standards for the board to follow). Furthermore, because the BZA's future use of the classification pursuant to section 9.6(D) is not directly in issue in this case, we need not determine whether that portion of the Ordinance purports to grant to the BZA quasi-legislative power reserved solely for the County Commissioners. We therefore hold that the BZA did not act outside of its statutory authorization, and the trial court's conclusions to the contrary are erroneous.

■ Remonstrators contend that, even if the BZA acted in a quasi-legislative capacity, the Bankerts were estopped from contesting the power of the BZA to act in such a manner because the Bankerts attempted to avail themselves of the very same chapters of the Ordinance under which the BZA acted. Remonstrators cite *General Telephone Co. of Indiana v. Public Service Commission* (1958), 238 Ind. 646, 150 N.E.2d 891, *reh. denied* 238 Ind. 646, 154 N.E.2d 372 where our supreme court held that a party which petitioned for a "Certificate of Territorial Authority" under an existing statute was estopped from asserting the unconstitutionality of that same statute on appeal. 238 Ind. at 651, 150 N.E.2d at 894. The Bankerts do not respond to Remonstrators' estoppel argument.

While the Bankerts did not rely upon precisely the same portion of the Ordinance that they later attacked as invalid, the distinction is unimportant. The Bankerts challenge section 9 of the Ordinance, which they claim improperly directs the BZA power to act in a quasi-legislative capacity. Although the Bankerts did not seek a determination by the BZA, they did submit an opinion letter in which their attorney sought to persuade the Director that a resource recovery system is similar to a junkyard and therefore permissible by right in an I–2 district. We may construe that as an attempt to proceed under section 3.0 of the Ordinance which instructs the Director to "classify" the use "following the provisions of Chapter 9." Logically, that language refers to use of the criteria listed in 9.6, the very procedure that the Bankerts object to the BZA having used, yet the Director was not statutorily authorized to amend the Ordinance without action of the County Commissioners any more than the BZA would be allowed to do so. *See generally* I.C. § 36–7–4–312 (describing the duties of the Executive Director). Furthermore, the Bankerts had the opportunity to contest the actions of the BZA at the May 22 meeting, but failed to do so. We therefore hold that the Bankerts were estopped from contesting the legality of the procedures established by the Ordinance.

■ Remonstrators next assert that the trial court erred in determining that a resource recovery system is a use permitted by right under the Ordinance. The trial court and the Bankerts take the position that, because a resource recovery system is defined in the Ordinance and is not specifically either prohibited or allowed only by special exception, it is permitted by right in an I–2 district. In support, the Bankerts cite to cases such as *Town of Merrillville Board of Zoning Appeals v. Public Storage, Inc.* (1991), Ind.App., 568 N.E.2d 1092,

*trans. denied; Boyle v. Kosciusko County* (1991), Ind.App., 565 N.E.2d 1157; and *Ayers v. Porter County Plan Comm'n* (1989), Ind.App., 544 N.E.2d 213 for the proposition that restrictions on land use are not to be extended by implication. Remonstrators respond with their own citations for the proposition that ordinances that list specific uses that are permitted are to be interpreted as permitting only those listed uses. Rohan, *Zoning and Land Use Controls* § 36.03[7] (1991); *Zoning Law and Practice* § 7–5 (4th Ed.1978); *Wiley v. County of Hanover* (1968), 209 Va. 153, 163 S.E.2d 160, 162.

However, we need not resort to rules of statutory construction because the Ordinance itself provides guidance as to its interpretation regarding uses not specifically listed in the tables. The BZA properly applied the Ordinance when it considered the factors listed in § 9.6 and made the appropriate findings. The Bankerts make much of the fact that a resource recovery system is defined, but not listed, and would have us view that fact as an indication that a resource recovery system was both contemplated by the Commissioners and intended to be permitted by right. Thus, according to the Bankerts, the BZA erred by following guidelines applicable to *uncontemplated* uses. Given the structure of the Ordinance, however, that fact most strongly supports the inference that the Commissioners failed to classify the use through oversight; it does not support the inference that the Commissioners intended the use to be permissible by right.

■ Remonstrators also are correct in their assertion that the trial court erred in finding that the Director had determined the proposed use to be similar to a junkyard and that he therefore acted unlawfully in failing to issue a permit. There is no evidence that the Director made the determination that a resource recovery system is similar to a junkyard. The undisputed evidence before the trial court was that the Director did not think he was in the position to make such a decision and therefore decided to refer the question to his immediate supervisor, the Commission.

The Bankerts would have us read the Director's oral statements to the Commission and the BZA, as well as his comments in the press, as an official determination triggering the requirement that he either issue or deny the permit. However, administrative officials do not make binding determinations through comments to the press or opinion statements to their supervisors. The only action by the Director of which we may take cognizance in this case is his decision to schedule the question of classification on the Commission's agenda. Although this is not precisely the procedure outlined by the Ordinance for referring unlisted uses to the BZA for classification, it was substantially the same because the Commission then forwarded the question to the BZA. While the BZA's classification of the use may have been erroneous, the error would be based solely upon questions of fact and law, not upon whether the decision was in conformity with either the Directors' or board members' informal opinions on the matter.

Remonstrators finally contend that the trial court erred in finding that certain BZA findings were not supported by the evidence. While the trial court stated that it did not rely upon the lack of evidence before the BZA to support its judgment of reversal, the question is pivotal because section 9.6 provides guidelines for the interpretation of the Ordinance which require factual findings by the BZA. We therefore must address this issue.

Remonstrators contend that there was sufficient evidence to support the BZA's findings and that the Bankerts cannot assert otherwise because they did not present any evidence at the May 22 meeting. The Bankerts respond that the evidence relied upon by Remonstrators consisted, in large part, of excerpts from an opinion letter by McNaught and McNaught's "oral argument" to the BZA. The Bankerts argue that the photograph of a packer truck delivering solid waste to a facility in Indianapolis falls far short of supporting the BZA's finding that a resource recovery system will generate a steady stream of heavy truck traffic. Remonstrators respond that the opinion letter and testimony of McNaught is typical of the type of evidence presented in BZA hearings.

When asked to review the sufficiency of evidence to support the BZA's findings, a reviewing court is limited to ascertaining whether there was any substantial evidence of probative value to support those findings. *Fail v. LaPorte County Board of Zoning Appeals* (1976), 171 Ind. App. 192, 197, 355 N.E.2d 455, 459.

First, we reject the Bankerts' argument concerning the procedural irregularities of McNaught's testimony. While McNaught's statements are not sworn testimony, they are similar to the type of evidence with which the Bankerts attempted to sway the Director. Furthermore, the Bankerts were present by counsel at the BZA meeting and did not object to or attempt to dispute any of McNaught's representations. They therefore have waived the right to contest the Board's consideration of such evidence.

Next, we hold that the content of McNaught's representations had sufficient probative value to support the BZA's findings. The BZA based its decision to classify the use as permitted only by special exception on the potentially wide variation of operations which could fit under the general definition of that type of use. McNaught identified two operations which fit the general definition of a resource recovery system and which varied widely regarding the amount of material that was actually recovered versus the amount that was transferred. Those facts support the possibility that the Bankerts could be planning to operate a facility which, in large part, would function to store, either permanently or temporarily, things such as "refuse, sludge for a waste treatment plant, other solid, liquid, semi-solid, or contained gaseous material." (Record, p. 183).[2] Such potential in turn supports the BZA's finding that consideration through the special exception process would be necessary to protect the public health, safety, general welfare and property values. Likewise, McNaught's representations support the conclusion that, depending upon the particular operation, the Bankerts' facility might be very similar to either a solid waste transfer station or a sanitary landfill, both of which are permitted in an I–2 district only by special exception.

Because we hold that the Director and the BZA properly followed the procedures set out in the Ordinance, and that the BZA's predicate factual findings were supported by probative evidence, we reverse the judgment of the trial court and remand the case with instructions for the trial court to deny the relief sought by the Bankerts and reinstate the decision of the BZA.[3]

**REVERSED AND REMANDED.**

BARTEAU and FRIEDLANDER, JJ., concur.

---

2. This is the definition of "solid waste" provided by the Ordinance. (Record, p. 183).

3. Although the trial court did not expressly rule upon the Bankerts' petition for declaratory judgment, our resolution of the issues raised in this appeal is dispositive of the issues presented by that petition.