Tom **SMITH, individually and as class representative of all others similarly situated, Appellants–Plaintiffs,**

v.

The **STATE LOTTERY COMMISSION OF INDIANA, Appellee– Defendant.**

**No. 49A05–9802–CV–59.**

Court of Appeals of Indiana.

Nov. 20, 1998.

Opinion Clarifying Decision on Rehearing Feb. 8, 1999.

Richard A. Waples, Waples & Hangar, Indianapolis, for Appellants–Plaintiffs.

David K. Herzog, James W. Clark, Baker & Daniels, Indianapolis, for Appellee–Defendant.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Tom Smith and all others similarly situated (Smith), appeal from the trial court's dismissal of their complaint for breach of contract against the appellee-defendant State Lottery Commission of Indiana (Lottery). Specifically, Smith contends that the trial court erred in dismissing his cause of action for lack of subject matter jurisdiction and determining that Smith was bound to exhaust administrative remedies.

## FACTS [1]

The Lottery began selling instant win scratch-off tickets through its retailers on October 13, 1989, and has since offered hundreds of such games, some running simultaneously. Tickets for some of the games sell for a few months, others for over a year. When Smith purchased his ticket, on September 15, 1996, the back of the card contained the following statement: "All prizes must be claimed within 60 days of announced end of game." [2]

Having discovered he had a winning ticket, Smith filled out the back of the ticket as required and presented it to the retailer on January 20, 1997, demanding his five dollar prize. Unbeknownst to Smith, the game had ended on September 30, 1996, and the last day to claim prizes was on November 29, 1996. The retailer informed Smith that it was too late to redeem his ticket. On January 22, 1997, Smith went to the principal office of the Hoosier Lottery in Indianapolis in an attempt to claim his prize. There he was told that the game was over and that nothing could be done to obtain his prize. There were no signs posted at the retailer's site announcing a closing date for the game,[3] nor was Smith advised by the retailer or the Lottery of an administrative appeal process or given a claim form.

On April 25, 1997, Smith filed a complaint in the trial court against the Lottery for breach of contract seeking damages for himself and for a class of all persons whose winning scratch-off lottery tickets were rejected by the Lottery as having been untimely presented. Smith also sought equitable relief on behalf of a subclass of future lottery game players in the form of an order requiring the Lottery to either cease denying players their winnings or take reasonable steps to announce the end of instant scratch-off games in the future.

On June 24, 1997, the Lottery filed a motion to dismiss, or in the alternative, for summary judgment. The Lottery claimed that Smith's complaint must be dismissed for lack of subject matter jurisdiction, or alternatively that it was entitled to summary judgment because Smith failed to claim his prize in a timely manner. Smith responded to the dismissal and summary judgment motions, and filed a cross motion for summary judgment, claiming that he was entitled to judgment as a matter of law because the Lottery had never publicly announced the end of the games and could not, under either its contractual obligations to ticket holders or its own regulations, deny ticket holders their winnings. Smith also filed a motion for class certification which was still pending when the case was dismissed. Following a hearing on October 14, 1997, the trial court granted the Lottery's motion to dismiss. In relevant part, the order of dismissal provided that the court lacked subject matter jurisdiction because Smith had not exhausted his administrative remedies; that an administrative process existed under the Indiana Administrative Orders and Procedures Act, IND.CODE § 4–21.5 et seq.; and that Smith had failed to demonstrate that he was not required to exhaust administrative remedies. Smith now appeals.

## DISCUSSION AND DECISION

Smith makes several arguments to support his contention that the trial court had jurisdiction over his cause of action. We restate them as follows. First, Smith maintains that

---

1. Oral argument was heard in Indianapolis on October 20, 1998.

2. Some time after Smith purchased his ticket, the Lottery changed the language on the back of the instant win scratch-off tickets, deleting "announced" before "end of game" and adding advice about where players could learn the game end date. The message now reads: "All prizes must be claimed within 60 days after the end of the game. Ask the game ending dates at any Hoosier Lottery Retailer or call 1–800–955–6886 for customer service." R. at 323.

3. During the period in question, the Lottery did not instruct retailers to publicly post the game end dates, nor did it publish game end dates in the Indiana Administrative Code, where it publishes other, detailed information about the Instant Winner games. See 65 IAC 4. This section consists of 317 pages of rules regarding these games. Subsequent to Smith bringing this action, the Lottery, apparently for the first time, began announcing to the public, through postings at retailers' places of business, the last date for winning players to claim their prizes. R. at 220–222, 226.

his cause of action is a contract claim, and thus it is within the jurisdiction of the trial court and does not come under the Administrative Orders and Procedures Act (the AOPA). Second, he argues that he should not have to exhaust administrative remedies because his challenge is not to an individualized quasi-judicial order but to the application of a standard agency practice, which is more akin to a rule. Third, he argues that, even if his action comes under the AOPA, he could not have exhausted administrative remedies within the agency because no administrative procedure existed at the time he brought his case, or in the alternative, that he need not exhaust remedies because any exhaustion would be futile.

### A. A Contract Claim?

Smith first maintains that his cause of action sounds in breach of contract, and it is thus not encompassed within the AOPA. For this reason, he argues, the trial court has jurisdiction over the claim, citing in support *Austin Lakes Joint Venture v. Avon Utilities, Inc.*, 648 N.E.2d 641, 649 (Ind.1995). In *Austin Lakes*, a developer brought a contract claim against a sewage treatment utility which had assured the developer it could service an entire planned subdivision and that it was in good standing and in compliance with applicable agency regulations. Subsequently, the developer sought a permit to connect to the treatment facility from the Indiana Department of Environmental Management and was denied because of the utility's waste treatment noncompliance. Our supreme court found that this contract claim came under the subject matter jurisdiction of the trial court. *Id.* at 649. Furthermore, Smith maintains that AOPA excludes contract claims such as his in providing that, "This article does not apply to the following agency action: ... (11) The acquisition, leasing, or disposition of property or procure-

ment of goods or services by contract." IND. CODE § 4–21.5–2–5.

When the Lottery came into existence, the General Assembly expressly required persons aggrieved by the Lottery's actions to pursue the administrative remedies of the AOPA, I.C. § 4–21.5 et seq. IND.CODE § 4–30–7–1.[4] Furthermore, an aggrieved person is entitled to judicial review only after exhaustion of administrative remedies. IND. CODE § 4–21.5–5–4.[5]

Moreover, in a recent case, this court found that the trial court had no subject matter jurisdiction over a class action brought in contract where a statute required class members to file claims first with a state agency. *Zayas v. Gregg Appliances, Inc.*, 676 N.E.2d 365, 366–67 (Ind.Ct.App.1997), *trans. denied.* This case concerned a class action suit filed against an appliance store which had erroneously charged state tax on delivery services. This court held in *Gregg* that IND.CODE § 6–8.1–9–7 required that a class action could not be brought on behalf of persons who had not first filed a claim with the Indiana Department of Revenue for a tax refund.

█ In the instant case, we do not find a contract claim supported by either case law or statute. Though cited by Smith for the proposition that contract claims fall within a trial court's jurisdiction, *Austin Lakes* is inapposite because it does not apply to a private party bringing a contract claim against an administrative agency but rather against another private party. In fact, our supreme court specifically noted in *Austin Lakes* that the private party was not challenging an agency decision and that "... if a party is required by the Administrative Adjudication Act to exhaust its administrative remedies before an agency before obtaining judicial review of the agency decision, courts are completely ousted of subject matter jurisdic-

---

4. "IC 4–21.5 applies to the commission's decision making process, except that a formal written protest of any decision, intended decision, or other action subject to IC 4–21.5 must be filed within seventy-two (72) hours after receipt of the notice of the decision, intended decision, or other action." I.C. § 4–30–7–1.

5. I.C. 4–21.5–5–4 provides in relevant part: "(a) A person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review."

tion to hear the case at all." *Austin Lakes*, 648 N.E.2d at 644.

Moreover, the exception cited by Smith in I.C. § 4–21.5–2–5(11), which exempts from the AOPA such agency actions as "[t]he acquisition, leasing, and disposition of property or procurement of goods or services by contract," does not apply to his case. Rather, it applies to actions taken by the Lottery with respect to vendors and retailers. *See* 65 IAC 2–5–1 ("Pursuant to Ind.Code § 4–21.5–2–5(11), procurement decisions by the commission or the director are not subject to IC 4–21.5.").

At best, the sale of instant game tickets might establish a quasi-contract between the Lottery and the player, but even so, the rules and regulations of the Lottery Commission apply, and this is so stated on the tickets sold: "All tickets, transactions and winners are subject to Lottery Regulations and State Law." R. at 277. *See also* 65 IAC 4–2–2.[6] Smith may not, simply by labeling his case a contract claim, escape the requirement that he exhaust administrative remedies provided by I.C. §§ 4–30–7–1 and 4–21.5 et seq. *See Gregg*, 676 N.E.2d at 366–67. For all of these reasons, we conclude that Smith does not have a contract claim and that his claim comes under the AOPA.

### B.   Rule or Order?

Smith next argues that he is not disputing an "order" but a Lottery "rule" of general application which states that it will not pay prizes for winning instant tickets submitted more than 60 days after the end of a game. Therefore, Smith maintains, he need not exhaust administrative remedies, as this requirement does not apply to challenges to agency rules. Ind.Code §§ 4–21.5–5–4; Ind. Code 4–22 et seq. He cites 65 IAC 4–3–1 to support his claim: "Prize-winning instant tickets are valid instant tickets that have been determined by the commission in accordance with this article to be official prize winners." He submits that the "determination" of the commission is the application of

pre-approved rules, rather than individual orders. In addition, he submits that his class has never gained access to an administrative process before the Lottery. This experience, he maintains, comports with the interpretation that the denial of prize payment to him and his class results from application of a rule rather than an adjudicatory order.

To resolve this issue, we turn to the relevant definitions. We initially note that rules and orders are defined in both statute and case law. A rule is defined in the AOPA as, ". . . the whole or any part of an agency statement of general applicability that:

(1) has or is designed to have the effect of law; and

(2) implements, interprets, or prescribes:

(A) law or policy; or

(B) the organization, procedure, or practice requirements of an agency."

I.C. § 4–21.5–1–14.

In contrast, an order is described in pertinent part as "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." I.C. § 4–21.5–1–9. An order operates "retrospectively upon events that have already occurred," *Bradley v. Bankert*, 616 N.E.2d 18, 22 (Ind.Ct.App.1993), *trans. denied.* A rulemaking function, on the other hand, "involves an element of generality and operates on a class of individuals," and has a "prospective effect." *Dept. of Environmental Management v. AMAX*, 529 N.E.2d 1209 at 1212 (Ind.App. 1988).

Smith aptly observes that, when the determination of the validity of millions of tickets is made by a programmed computer, it appears to involve "an element of generality" and to operate on "a class of individuals." *Id.* Nonetheless, the Lottery's denial of his request to redeem his ticket operated "retrospectively upon events which had already occurred," *Bradley*, 616 N.E.2d at 22, and determined "the legal rights . . . of one or more specific persons." I.C. § 4–21.5–1–9.

---

**6.** "Any person who purchases an instant ticket agrees thereby to comply with and abide by IC 4–30, this title, and all procedures and instructions established by and final decisions of the director in connection with the conduct of the instant game for which the instant ticket is purchased." 65 IAC 4–2–2.

Smith wanted his prize and went to the Lottery office to demand it. In contesting the application of the Lottery's rule to his individual case, Smith is actually contesting an order. Thus, we conclude that, because Smith's complaint regards an administrative order, he was required to exhaust administrative remedies under I.C. § 4–21.5–5–4, unless one of the judicially recognized exceptions to the exhaustion requirement applies. Relevant exceptions are discussed below.

### C. Exhaustion of Administrative Remedies

Third, Smith argues that, even if his complaint came under the AOPA, either he had exhausted his administrative remedies because the Lottery had no administrative procedure available beyond the steps he took, or in the alternative, he need not have exhausted administrative remedies because such efforts would be futile.

■ There exists a strong bias in case law in favor of the requirement that administrative remedies be exhausted. The objective of such a requirement is to avoid collateral, dilatory action, ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review, and provide an agency with an opportunity to correct its own errors and to compile a factual record as necessary for judicial review. *Austin Lakes,* 648 N.E.2d at 644.

■ Be that as it may, we recognize that there are exceptions to the requirement of exhaustion of remedies at the agency level. For instance, a party is excepted from the exhaustion requirement when the remedy is inadequate or would be futile, or when some equitable consideration precludes application of the rule. *Indiana State Building and Construction Trades Council v. Warsaw Community School Corp.,* 493 N.E.2d 800, 806 (Ind.Ct.App.1986). To prevail upon a claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." *Id.* Furthermore, the requirement of exhaustion of administrative remedies "will be relaxed where there is grave doubt as to the availability of the administrative remedy." *Indiana High Sch. Athletic Ass'n v. Raike,* 164 Ind.App. 169, 329 N.E.2d 66, 82 (1975).

■ First, we note the difficulties involved in Smith's ascertaining the "announced end of game." The record indicates that Smith saw no posting at the retailer's site announcing the end date for the game for which he had purchased a ticket. R. at 220. The evidence is uncontroverted that, at the time Smith purchased his ticket and when he sought to redeem it, the Lottery did not require the retailers to post Instant Game ending dates, which it announced only to them. R. at 228–29, 292–94. When Instant Games begin, their ending dates are generally not already decided. 65 IAC 4–2–3 ("An instant game will end when all instant tickets for that instant game have been sold or on a date announced in advance by the director. The director may suspend or terminate an instant game without advance notice if the director finds that such suspension or termination is in the best interests of the commission.") Thus, from Smith's point of view, the ending date of a game could have been announced at any time. The date might not have been known when Smith purchased the ticket, a circumstance which would oblige him either to be clairvoyant or to affirmatively, and perhaps repeatedly, act to ascertain the end date of a game by calling the Lottery customer service number or returning to his retailer.

Second, when Smith was denied his winnings, he was obliged, according to the Lottery, to initiate an administrative proceeding. The Lottery maintains that it was unimportant that no printed form was available to initiate that administrative process and that the trial court correctly found that any writing would suffice to start the process. Appellee's brief at 18. Moreover, the Lottery asserts that it is "irrelevant" that its personnel did not help Smith or others in the class to initiate an administrative process because there is no statutory requirement that it do so. It also contends that it properly treated the inquiries of Smith and others in his class as "informal" ones, not requiring any admin-

istrative reaction beyond what it offered. Appellee's brief at 19. The Lottery advises Smith that he should have consulted IND. CODE §§ 4–30–7–1 and 4–21.5 et seq. in order to understand the steps of the necessary administrative appeal process. Appellee's brief at 19.

As stated above, the majority of administrative law cases have required that administrative remedies be exhausted.[7] However, we note, among the many cases fitting an exception to the requirement, one which is closely comparable to Smith's. In *Raike,* a high school athlete who married during his senior year obtained a declaratory judgment and permanent injunction prohibiting the Indiana High School Athletic Association (IHSAA) and Rushville Consolidated School Corporation (Rushville) from enforcing a rule restricting married students from participation in Rushville's athletic and extra-curricular program. *Raike,* 329 N.E.2d at 69. Raike had brought the suit after seeking unsuccessfully to avoid operation of the rule by repeatedly requesting the help of the Rushville Principal and the School Superintendent. *Id.* at 81. Raike's attorney ultimately wrote to the Superintendent and received a letter in reply, which stated:

> The policy on married students was reviewed by the Board of Education on October 11, 1971, and the Board voted to leave the policy the same as printed in the school board handbook. Since the policy was reviewed only recently, I will exert no further effort to have the policy changed.

*Id.* at 81–82. The school board handbook referred to in the letter provided no procedure for a student to follow in seeking to change or eliminate a school board rule. *Id.* Raike subsequently brought the action for injunctive relief and prevailed.

On appeal, the IHSAA and Rushville contended in part that Raike had not exhausted the required administrative remedies. However, this court found that Raike had exhausted the administrative remedies available to him. *Id.* at 82. We noted that, had a hearing been sought under the Administrative Adjudication Act, it "would have been useless in view of [the Superintendent's] letter." *Id.*

In the instant case, the record reveals numerous and varied efforts of Smith and others in his proposed class to obtain satisfaction from the Lottery. None were offered forms to complete, nor did any of their other writings suffice to initiate an administrative appeal process. R. at 295–96, 378–79, 385–87. The Lottery appears to argue that it need not offer either forms or advice on commencing the administrative process, but that it can, at the same time, require that average citizens consult the Indiana Administrative Code and Indiana Code in order to determine what process is available and what they might do to communicate to the Lottery their wish to initiate it.[8] This is far more than we required of Raike when he faced what appeared to be a final refusal from an administrative agency. We find that, in this case as in *Raike,* the rule for exhaustion of

---

7. The two cases cited by Smith as exceptions to the exhaustion requirement are in fact distinguishable from Smith's case because both regarded situations in which administrative remedies had been exhausted on the same or closely related issues. In *Indiana Family and Social Services Admin. v. Methodist Hospital of Indiana,* 669 N.E.2d 186 (Ind.Ct.App.1996), this court rejected the position that, after a physician's request for authorization of Medicaid services was denied, the physician's employing hospital should have to refile, making the same request, and exhaust its administrative remedies as well. *Id.* at 188. In *Indiana Medical Licensing Board v. Provisor,* 678 N.E.2d 814 (Ind.Ct.App.1997), we deemed a physician's administrative remedies regarding the renewal of her medical license to be exhausted where she had already exhausted administrative remedies regarding the suspension of her license. *Id.* at 818.

8. The Lottery also maintained at oral argument that, had Smith exhausted his administrative remedies, he might have obtained his prize money from the director because the current director sometimes pays prize winnings on expired tickets. If this indeed occurs, it is beyond the scope of the director's authority. In accordance with 65 IAC 4–2–6(b), the director is prohibited from paying a prize when a ticket has been "otherwise determined not to be a winning ticket." Furthermore, the record shows that the director who held office at the time in question did not offer aggrieved ticket holders their winnings, but only another instant ticket or promotional items, and only at his sole discretion. R. at 39, n. 2, 385–86. It is well-settled case law that one is not required to exhaust remedies when those remedies are inadequate. *State v. Sproles,* 672 N.E.2d 1353, 1362 (Ind.1996).

administrative remedies is "relaxed" because "there is grave doubt as to the availability of an administrative remedy." *Id.* at 82.

## CONCLUSION

In conclusion, we find that Smith's action is not a contract claim but rather an appeal from an agency order, which falls under the AOPA. Furthermore, we find that Smith is entitled to judicial review because his case falls into one of the exceptions to the requirement of exhaustion of administrative remedies: there is grave doubt that any such remedy was available at the Lottery during the time in question.

We reverse the trial court decision and remand for judicial review under the criteria of IND.CODE § 4–21.5–5–14, with the recommendation that the trial court consider certification of a class action.

Judgment reversed and remanded.

## OPINION ON REHEARING

Appellant Tom Smith files a petition for rehearing requesting that the court modify its decision to clarify that Smith is not precluded from adjudicating his claim before the trial court. This court's decision focused in part on *Austin Lakes Joint Venture v. Avon Utilities, Inc.*, 648 N.E.2d 641 (Ind.1995), to demonstrate that some transactions, contractual or quasi-contractural, escape the Administrative Orders and Procedures Act, while others do not. We concluded that Smith's transaction with the Lottery, whatever its nature, came under the AOPA and that he had exhausted all available remedies. Thus, the trial court is free to adjudicate Smith's claim and to determine the nature of the transaction between Smith and the Lottery. Smith's petition for rehearing is granted for the limited purpose of clarifying our original opinion.

In addition, the Lottery's petition for rehearing is denied without further opinion.

DARDEN and BAILEY, JJ., concur.