**FILED**

May 23 2019, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

David M. Seiter
Cate, Terry & Gookins, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alvin L. Lewis,<br>*Appellant-Respondent,*<br><br>v.<br><br>Putnam County<br>Sheriff's Department,<br>*Appellee-Petitioner* | May 23, 2019<br><br>Court of Appeals Case No.<br>18A-MI-1869<br><br>Appeal from the Putnam Circuit<br>Court<br><br>The Honorable Matthew L.<br>Headley, Judge<br><br>Trial Court Cause No.<br>67C01-1808-MI-67 |

**Baker, Judge.**

[1] Alvin Lewis was pulled over as part of a routine traffic stop. The deputy told Lewis he would merely get a warning but, because of some inconsistent answers provided by Lewis, the deputy decided to conduct a dog sniff of Lewis's vehicle. After the dog alerted, the deputy searched Lewis's vehicle and found over $77,000 in cash. Lewis denied that the money was his. No criminal charges were filed, but the State seized the cash and filed a motion to turn the money over to the federal government, which the trial court granted. Lewis now appeals, arguing that the search was unlawful and that, even if the search was lawful, the seizure of the cash was unlawful because the State failed to show a nexus between the cash and any crime. Finding that the seizure of the cash was unlawful and that the trial court erred by granting the motion for turnover, we reverse and remand.

## Facts[1]

[2] On February 14, 2018, Putnam County Sheriff's Department Deputy Dwight Simmons observed a vehicle driving westbound on I-74. The vehicle was marked with an Arizona temporary license plate. Deputy Simmons initiated a traffic stop, explaining to Lewis, the driver, that the temporary plate was hard to read, that Lewis was weaving back and forth, and that he was not maintaining a steady rate of speed. Lewis explained that he had purchased the vehicle from a friend and that he had ninety days to fix the title issues with the

---

[1] We held oral argument in this case in Indianapolis on May 14, 2019.

Bureau of Motor Vehicles (BMV). He also explained in detail the steps he had already taken in that regard.

[3] Lewis provided all the documents requested by Deputy Simmons regarding the vehicle and asked if he was in trouble. Deputy Simmons responded negatively and invited Lewis to sit in the passenger seat of the police vehicle with him.[2] The computer was running slowly, so it took approximately fifteen minutes to check Lewis's license, which the deputy confirmed was in good standing.

[4] Deputy Simmons then asked Lewis questions about Lewis's wife, their relationship, what Lewis does for a living, what his wife does for a living, what hotel Lewis stayed at in Ohio, whether he owned a house, what type of gas mileage his car received, where his siblings live, and where he planned to stop on his drive back to Arizona. Lewis responded to each of the questions but prevaricated on certain details requested by Deputy Simmons. He stated that he was from Arizona and had driven to visit his brother in Akron, Ohio, after having a fight with his girlfriend, though later stated she was his wife of fifteen years. He initially said that he had purchased the vehicle from "Sergio," and then clarified that he bought it from a friend who had bought it from Sergio. Lewis did not know any further identifying information regarding Sergio.

---

[2] The in-car camera video of the traffic stop was admitted into evidence as Respondent's Exhibit A, Parts 1 through 4.

[5] About twenty minutes into the stop, Deputy Simmons told Lewis, "We are getting there. I think you are just about good here." Tr. Resp. Ex. A Part 1, File 2. Deputy Simmons told Lewis that he was going to give him a warning related to the basis for the traffic stop. After Deputy Simmons completed the warning ticket and all checks on Lewis's license and insurance, he asked Lewis whether he had ever been in any trouble for narcotics-related activity. Lewis said that there "might have" been something in Detroit. *Id.* The deputy then asked Lewis whether there were any narcotics, guns, or large sums of currency in the vehicle; Lewis said that there was not. Deputy Simmons clarified, "No narcotics?" Lewis paused before answering, "no," causing the deputy to note that "you had to think about that." *Id.* Deputy Simmons asked Lewis whether he would consent to a search of the vehicle; Lewis refused.

[6] Deputy Simmons then conducted a K-9 sweep and the K-9 officer alerted twice on the vehicle's passenger side.[3] The deputy called for backup and, after the backup deputy arrived, Deputy Simmons conducted a warrantless search of Lewis's vehicle. He found a hidden compartment behind the rear seat; Lewis denied any knowledge of its existence or contents. Inside, the deputy found $77,060 in cash and two digital scales,[4] but no illegal narcotics. Lewis

---

[3] The K-9 must have alerted mistakenly as no evidence of drugs or contraband was found in the vehicle after a thorough search.

[4] At a May 11, 2018, hearing, the State stipulated that no drug paraphernalia was found in the vehicle. In other words, the digital scales were not drug paraphernalia. Tr. Vol. II p. 5. The State never tested the scales or the cash for drug residue.

repeatedly denied that the money was his. Deputy Simmons seized the currency for the purpose of turning it over to the federal government, with Lewis named as the respondent.[5]

[7] On March 20, 2018, the State filed a motion for a turnover order to transfer the seized funds to the federal government pursuant to Indiana Code section 35-33-5-5.[6] Lewis objected and asked the trial court to hold a hearing. Ultimately, the trial court held an evidentiary hearing on June 15, 2018, to determine whether the search of the vehicle was valid. On July 9, 2018, the trial court granted the State's petition, finding, in pertinent part, as follows:

> 7. . . . It is long standing law in Indiana that a "dog sniff" is not a search so the only argument that [Lewis] may have is that the sniff unduly delayed the stop. Here, the dog sniff takes approximately 5-minutes [sic]. [The] Court finds that this does not unduly delay [Lewis] as a dog sniff isn't a [s]earch, [so] the 4th Amendment to the US Constitution and Article 1, Section 11 of the Indiana State Constitution is [sic] inapplicable.

> 8. Moreover, even if this was an impermissible search, [Lewis] says two times that (the money) is not his on the [dash camera video], when questioned by the deputy about the money. [Lewis] cannot disclaim ownership of the money at one instance and now claim that it is his. The only claim to ownership is via [Lewis's] attorney filing an "objection". Common sense would dictate that someone

---

[5] Lewis was not arrested and is not facing any criminal charges as a result of the incident.

[6] The federal government also notified Lewis that it intended to move for forfeiture of the money.

would know if he put $77,060.00 in cash in the vehicle. So under this scenario, the property is abandoned property due to [Lewis] disclaiming it and no other person claiming ownership.

Appealed Order p. 2 (internal citations omitted). Lewis now appeals.

# Discussion and Decision

## I. Standing

[8] Before addressing Lewis's substantive arguments, the State insists that while Lewis has standing to challenge the stop and seizure of the vehicle that he was driving, he has no standing to challenge the seizure and turnover of the money because he explicitly disclaimed any ownership or possessory interest therein.

[9] Fourth Amendment and Article 1, Section 11 rights are personal rights that may not be asserted vicariously. *Allen v. State*, 893 N.E.2d 1092, 1096-99 (Ind. Ct. App. 2008). To have standing to challenge the seizure of property, a person must have an interest in the property seized because he has no constitutional right to challenge the seizure of another person's property—even if there was no probable cause for the search. *Johnson v. State*, 472 N.E.2d 892, 898 (Ind. 1985).

[10] When Deputy Simmons showed Lewis the money found in the secret compartment in the vehicle, Lewis immediately stated, "that's not mine," and again, two seconds later, "that's not mine." Tr. Resp. Ex. A Part 2, File 3. A minute later, Lewis asserted for a third time, "that's not mine." *Id.* Because

Lewis clearly and repeatedly disclaimed ownership of the cash, the State insists that he does not have standing to challenge the turnover order.

[11] But the State makes this argument for the first time on appeal, which our Supreme Court has held is not permissible:

> Where the prosecution has failed to make any trial court challenge to standing, the government may not raise the issue for the first time on appeal. Likewise, in resolving a claim of unlawful search and seizure, an appellate court should not invoke lack of standing, sua sponte.

*Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992) (internal citations omitted). Not only did the State not make a standing argument below, it named Lewis as the one and only party in interest in the turnover proceedings. From the outset, therefore, the State conceded the issue of standing, and even if it had not done so, it has waived the argument for the purpose of appeal.[7]

## II. Turnover Statute

[12] At issue in this case is the State's request to turn over the cash it seized from Lewis's vehicle to the federal government. The turnover statute provides as follows:

---

[7] We note that the State also agreed below that this Court's opinion in *Bowman v. State*, which held that forfeiture of cash was impermissible where there was no nexus between the cash and criminal activity, controlled the outcome here. 81 N.E.3d 1127 (Ind. 2017), *trans. denied*, *cert. denied*. Tr. Vol. II p. 6, 20, 25-26. It appears that both Lewis's counsel and the deputy prosecutor were surprised, given that they essentially agreed on all salient points, that the trial court found that they were both wrong and granted the turnover order.

> Upon motion of the prosecuting attorney, the court shall order *property seized under IC 34-24-1* transferred, subject to the perfected liens or other security interests of any person in the property, to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616a, or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.

I.C. § 35-33-5-5(j) (emphasis added). Therefore, to be turned over to the federal government, the State must show that the property was properly seized pursuant to Indiana Code chapter 34-24-1—the forfeiture statutes.[8]

[13] Relevant to this case is Indiana Code section 34-24-1-1(a)(2),[9] which provides that money may be seized by the State if it was:

> (A) furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute;
>
> (B) used to facilitate any violation of a criminal statute; or
>
> (C) traceable as proceeds of the violation of a criminal statute.

---

[8] Lewis directs our attention to *Adams v. State*, in which this Court found that the State must show, pursuant to Indiana Code section 34-24-1-2, that property subject to a turnover motion must have been seized pursuant to a lawful arrest or lawful search. 967 N.E.2d 568, 570 (Ind. Ct. App. 2012). Lewis seems to believe that the *Adams* Court held that to be entitled to a turnover order, the State need only satisfy Indiana Code section 34-24-1-2. We do not believe that the *Adams* decision intended to imply that the State need not also satisfy Indiana Code section 34-24-1-1 (or, indeed, all of Indiana Code chapter 34-24-1, as explicitly stated by the turnover statute); instead, it was only section -2 that was at issue in *Adams* and, consequently, that was the only statute relevant to that appeal. We do not believe that *Adams* diverges from our analysis here.

[9] This statute was amended in the 2019 legislative session but the portions relevant to this appeal remain the same.

In other words, the General Assembly has reasonably decreed that for the State to seize cash and seek its forfeiture—or turnover—it must show a nexus between the cash and some sort of criminal activity.

[14] In this case, there is *no evidence whatsoever that a crime occurred*. No drugs were found. The State did not bother to test the scales or the cash for residue, so no drug residue was found. No drug paraphernalia was found. The State insisted at oral argument that while it is "unclear what the crime is," there must have been a crime committed in the context of the possession of this much cash. We think this argument goes several steps too far. The plain language of the statute requires the State to prove that the money is directly related to some sort of criminal activity. Here, there is a complete dearth of evidence in that regard.

[15] Under these circumstances, the State has wholly failed to prove that the cash was properly seized pursuant to Indiana Code chapter 34-24-1. Therefore, it has failed to show that it is entitled to a turnover order under Indiana Code section 35-33-5-5(j), and the trial court erred by granting the State's motion.

[16] Unfortunately, Lewis's money was prematurely turned over to the federal government, which is now in possession of it.[10] Given the unusual circumstances of this case, especially the fact that there is no evidence

---

[10] We note our concern that Deputy Simmons has apparently already, and prematurely, turned the currency over to federal law enforcement. It appears, as a result, that the currency is in federal, rather than state, possession at this time. We strongly encourage law enforcement officers to abide by state law with respect to forfeiture and turnover proceedings.

whatsoever that a crime was committed, we do not believe that it is fair to require Lewis to undertake the process of retrieving his money from the federal government. Therefore, we reverse and remand with instructions that the State reimburse Lewis instanter; the State may then choose to try to recoup that money from the federal government.

[17] Because we have resolved this case pursuant to the turnover and forfeiture statutes, we need not and will not consider the parties' arguments regarding the constitutionality of the search.

[18] The judgment of the trial court is reversed and remanded.

Najam, J., and Robb, J., concur.