

IN THE

# Court of Appeals of Indiana

Indiana Housing & Community Development Authority, *et al.*,

*Appellants-Defendants*



FILED

Sep 23 2025, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Cadence Blanchard, *et al.*,

*Appellees-Plaintiffs*

---

September 23, 2025

Court of Appeals Case No.
25A-PL-1383

Appeal from the Marion Superior Court

The Honorable A. Richard M. Blaiklock, Judge

Trial Court Cause No.
49D11-2504-PL-16374

---

**Opinion by Judge Tavitas**
Judge Felix concurs in result with separate opinion.

Judge Vaidik dissents with separate opinion.

**Tavitas, Judge.**

## Case Summary

[1] In this interlocutory appeal, the Indiana Housing and Community Development Authority and other individual defendants[1] (collectively, "IHCDA") appeal the trial court's order granting a preliminary injunction and certifying a class action regarding IHCDA's termination of the Indiana Emergency Rental Assistance 2 program ("IERA2"). The program was created to administer rental assistance using federal funding appropriated as a result of the Covid-19 pandemic. The trial court granted the preliminary injunction after finding that Plaintiffs were likely to succeed on their claim that the termination of IERA2 contravened the Administrative Orders and Procedures Act ("AOPA"). The trial court ordered IHCDA to reopen the program and granted Plaintiffs' motion for certification of a class.

[2] IHCDA argues that the trial court abused its discretion by granting the preliminary injunction and certifying the class. We agree. We hold that the trial court abused its discretion by granting the preliminary injunction because Plaintiffs lack standing under the AOPA, so they cannot succeed on that claim.

---

[1] The individual defendants include: Dan Huge; Micah Beckwith; Daniel Elliott; Thomas K. McGowan; Andy Place, Sr.; G. Michael Shopmeyer; and Chad A. Greiwe.

We further hold that the trial court abused its discretion by certifying the class because, as currently defined, the class is not sufficiently definite regarding whether or not an individual is a member. Accordingly, we reverse and remand.

## Issues

IHCDA raises several issues, two of which we find dispositive. We restate the issues as:

> I. Whether Plaintiffs have standing under the AOPA to demonstrate a likelihood of success on the merits, as required for a preliminary injunction.

> II. Whether the trial court abused its discretion by certifying the class.

## Facts

In the wake of the Covid-19 pandemic, the federal government passed the March 2021 American Rescue Plan Act ("ARPA")[2], which appropriated funds from the United States Treasury to States and localities for "financial assistance and housing stability services to eligible households." 15 U.S.C. § 9058a(c). Indiana administered allocated funds under two Indiana Emergency Rental Assistance programs: first, IERA1 and, later, IERA2.

---

[2] Pub. L. No. 117-2, Mar. 11, 2021, 135 Stat. 4.

IERA2 consisted of nearly $292 million in funds. IERA2 funds could be used to provide up to fifteen months of rental assistance for eligible households, and a household that had also received funds under IERA1 could receive a combined total of eighteen months of rental assistance. These federal funds would "remain available through September 30, 2025." *Id*. at § 9058c(g). After this date, an agency administering the funds could not issue additional rental assistance using the federal funds.[3]

After the State of Indiana received the federal funds in September 2021, the Indiana State Budget Agency ("SBA"), a subagency of the Office of Management and Budget, tasked IHCDA with the administration of the IERA2 program. The memorandum of understanding ("MOU") between the agencies provided that the "MOU shall be effective upon commencement and ends through September 30, 2025" and that,

> [w]hen the Director of the SBA makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of this memorandum, the memorandum shall be canceled. A determination by the Director of the SBA that funds are not appropriated or otherwise available to support continuation of performance shall be final and conclusive.

Ex. Vol. VII p. 39.

---

[3] The agency, however, could pay off outstanding "obligations for services," such as those rendered by contractors, for an additional forty-five days. Tr. Vol. II p. 28.

Given the September 30, 2025 deadline for rental assistance payments, IHCDA initially planned to issue final rental assistance payments in June 2025 and then begin winding down the program. On March 17, 2025, however, IHCDA staff received an email from Alex Hickner, Chief of Staff at the Office of Business Affairs, stating that Secretary of Business Affairs Mike Speedy "would like to shutter the Indiana Emergency Rental Assistance program effective immediately." *Id*. at. 71. IHCDA was "under the vertical" of the Secretary of Business Affairs, who served as a "funnel from the Governor to the Agency" and exercised "oversight" over IHCDA. Ex. Vol. VIII pp. 20-21. The next day, March 18, 2025, IHCDA special advisor Doug Eckerty also indicated that Secretary Speedy intended March to be the final month that rental assistance payments would be issued.

IHCDA immediately began winding down IERA2. Before the end of March 2025, IHCDA closed the application portal, issued final rental assistance payments, terminated contracts with providers, and terminated staff. On March 26, 2025, IHCDA sent emails to applicants whose applications had not been processed to inform them of the termination of the program. The email stated:

> The Indiana Emergency Rental Assistance Program (IERA), which provided assistance for rent and utility payments for Indiana residents, is now closed. IERA was launched during the pandemic and was specifically designed to aid those whose income was negatively affected by COVID. With the COVID emergency declared over in May 2023, the program has served its

purpose. Our agency is required to begin closeout of the program immediately.

Ex. Vol. II p. 3. At the time IHCDA closed the program, several million dollars in IERA funds remained, and IHCDA sought to return the funds to the federal government.

The plaintiffs in this case are Cadence Blanchard, Muriel Amlett, and Lisa Carpenter. Blanchard is a full-time university student who has work limitations due to a disability. She received rental assistance in March 2024. She applied for additional assistance in September 2024; however, her application was not accepted before the IERA program closed because of delays in assigning her to counseling. Counseling was required before an applicant who already received rental assistance could receive additional assistance under IERA2. Carpenter is a retired nurse who receives income from social security disability payments. Carpenter received rental assistance twice from IHCDA. She applied for additional rental assistance on March 5, 2025, but was informed that the program was closed. Amlett applied for rental assistance in January 2025 after she lost her job, but her application was still pending when the program closed.

On April 7, 2025, Blanchard filed a complaint for declaratory judgment and injunctive relief. [4] Blanchard filed motions seeking a temporary restraining

---

[4] Blanchard claimed that IHCDA's decision to close the IERA2 program and return the remaining funds to the federal government exceeded IHCDA's statutory authority and violated the Indiana Open Door Law, Indiana Code Chapter 5-14-1.5.

order, preliminary injunction, and certification of the cause as a class action, which IHCDA opposed. The trial court denied the motion for a temporary restraining order in an order issued on April 15, 2025.

[11] On April 21, 2025, an amended complaint was filed adding Amlett and Carpenter alongside Blanchard ("Plaintiffs") as plaintiffs. The amended complaint alleged, in part, that IHCDA's decision to close the IERA2 program and return the remaining funds to the federal government was invalid under the AOPA.[5] Plaintiffs filed an amended motion for certification of a class comprised of:

> All Indiana residents who, on March 26, 2025, were members of eligible households, as that term is defined in section 3201(f)(2) of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, which had not received 18 months of emergency rental assistance in total under ERA1 and ERA2.

Appellants' App. Vol. II p. 122.[6]

---

[5] In the amended complaint, Plaintiffs also alleged that IHCDA's decision violated the equal privileges and immunities clause of the Indiana Constitution; interfered with the "implicit fundamental right to housing" under the Indiana Constitution; and violated the Indiana Open Door Law. Appellants' App. Vol. II p. 124. The trial court found that the Plaintiffs were likely to succeed only under the AOPA and, thus, this is the only claim that we review in this opinion.

[6] As alleged in the amended complaint, each plaintiff sought to represent a distinct subclass. Blanchard sought to represent a subclass of those "who were on IHCDA's waitlist to receive the counseling services necessary to fulfill the IHCDA Counseling Requirements"; Amlett sought to represent a subclass of those "who had not received an initial IERA2 payment of past due rent plus three months forward rent"; and Carpenter sought to represent a subclass of those "who had fulfilled the IHCDA Counseling Requirements and completed the recertification process." Appellants' App. Vol. II pp. 122-23.

[12] Plaintiffs also filed an amended motion for a preliminary injunction, which requested that the trial court "order [IHCDA] to stop or unwind their termination of the IERA2 program . . . and to resume distributing IERA 2 assistance to Plaintiffs and putative Class and Subclass members." *Id*. at 129. IHCDA filed a motion in opposition arguing, among other things, that the preliminary injunction and class certification were improper because the termination of the IERA2 program did not constitute an "order" reviewable under the AOPA. *Id*. at 177.

[13] The trial court held a hearing regarding the preliminary injunction and class certification motions on May 28, 2025. Blanchard, Carpenter, and Amlett testified, as did Victoria Bourret, a project manager with the National Low Income Housing Coalition, and Rayanna Binder, Director of Program Integrity for IHCDA. The following were admitted into evidence: (1) the MOU between the SBA and IHCDA; (2) a policy manual created by IHCDA for the IERA2 program; and (3) the deposition of Kyleen Welling, former Chief of Staff and Chief Operating Officer of IHCDA.

[14] On June 2, 2025, the trial court issued a written order granting in part and denying in part[7] the motion for the preliminary injunction and certifying the

---

[7] Plaintiffs requested that the trial court "remove the IHCDA Counseling Requirements to the extent these bar Plaintiffs from receiving IERA 2 assistance." Appellants' App. Vol. II p. 129. The trial court determined that Plaintiffs were unlikely to succeed on this claim and did not order the IHCDA to remove the counseling requirement as a part of the preliminary injunction order. As Plaintiffs do not cross-appeal the trial court's determination in this regard, we do not review it.

class. The trial court found that "the applicable 'agency order' was the decision to shut down IREA2 by the end of March 2025" and that Plaintiffs were likely to succeed on their AOPA claims.[8] *Id*. at 46. The trial court ordered IHCDA to: (1) continue processing applications received as of March 21, 2025, and issue rental assistance to eligible applicants; (2) process additional applications received upon reopening "for as long as [IHCDA] can do so consistent with the terms of the IERA2 program agreement with the federal government"; and (3) withhold transferring funds back to the federal government. *Id*. at 55-56. IHCDA now appeals.

## Discussion and Decision

[15] IHCDA challenges the trial court's order granting the preliminary injunction and certifying the class. The trial court only granted the preliminary injunction because it found Plaintiffs were likely to succeed on their AOPA claims. IHCDA argues that the AOPA does not authorize preliminary injunctions, but we need not address that issue because another issue is dispositive: the termination of the IERA2 program does not constitute an "order," as that term is defined by the AOPA. Therefore, Plaintiffs lack standing to bring their AOPA claims. Because the preliminary injunction was based on these AOPA

---

[8] The trial court found that Plaintiffs were likely to succeed because there were "no findings, no analysis, no documented assessment to justify shutting down a federally funded housing stability program months before it was set to run out of federal money." Appellants' App. Vol. II p. 50.

claims, the trial court's grant of a preliminary injunction was an abuse of discretion. IHCDA is not required to restart the IERA2 program.

[16] As for the class certification, IHCDA argues that the AOPA does not authorize class actions. We need not address this issue either because the class, as currently defined, is not sufficiently definite. The class is defined in terms of "eligible households," but only IHCDA can determine which households are eligible. As the IERA2 program has been terminated, IHCDA can no longer make that determination. Accordingly, the class certification is also an abuse of discretion.

## I. The trial court abused its discretion by granting the motion for preliminary injunction.

[17] We review the grant of a preliminary injunction for an abuse of the trial court's discretion, which occurs if the trial court's decision was against the logic and effect of the facts and circumstances before the court. *Willow Haven on 106th Street, LLC v. Nagireddy*, 252 N.E.3d 418, 422 (Ind. 2025) (citing *Ind. Fam. and Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind. 2002); *Wisner v. Laney*, 984 N.E.2d 1201, 1205 (Ind. 2012)). "Another way the trial court abuses its discretion is by misinterpreting the law." *Id*. (citing *Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, 211 N.E.3d 957, 964 (Ind. 2023), *reh'g denied*, 214 N.E.3d 348 (Ind. 2023)). When granting a preliminary injunction, the trial court must enter special findings. *Id*. (citing Ind. Trial Rule 52(A); T.R. 65(D)). "On appeal, we determine 'whether the evidence supports the findings and, if so, whether the findings support the

judgment.'" *Id.* (quoting *Town of Linden v. Birge*, 204 N.E.3d 229, 233 (Ind. 2023). "We review the trial court's factual findings for clear error and its legal conclusions de novo." *Id.* (citing *Birge*, 204 N.E.3d at 234).

[18] To obtain a preliminary injunction, the plaintiff must show:

> "(1) they have a reasonable likelihood of success at trial;
>
> (2) their remedies at law are inadequate, meaning they will suffer irreparable harm without an injunction;
>
> (3) the potential injury without an injunction outweighs the potential harm from an injunction; and
>
> (4) issuing the injunction will not disserve the public interest."

*Id.* (quoting *Walgreen*, 769 N.E.2d at 161).

[19] IHCDA argues that the relief of a preliminary injunction is unavailable under the AOPA. We need not decide that issue because, even if a preliminary injunction is allowed under the AOPA, Plaintiffs lack AOPA standing and, therefore, cannot demonstrate a reasonable likelihood of success regarding their AOPA claims.

[20] For most agencies, the AOPA "establishes the exclusive means for judicial review of an agency action." Ind. Code § 4-21.5-5-1; *see Teaching Our Posterity Success, Inc. v. Ind. Dep't of Educ.*, 20 N.E.3d 149, 151 (Ind. 2014). When we review the trial court's ruling on an AOPA determination, rather than defer to

the trial court, "we stand in the trial court's shoes." *Brookston Res., Inc. v. Dept. of Nat. Res.*, 243 N.E.3d 1127, 1139 (Ind. Ct. App. 2024) (citing *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 991 (Ind. 2014)), *trans. denied*. In other words, "[w]e review an administrative agency's order using the same standard as the trial court." *Ind. Dept. of Nat. Res. v. Prosser*, 132 N.E.3d 397, 401 (Ind. Ct. App. 2019) (citing *Gray v. Med. Licensing Bd. of Ind.*, 102 N.E.3d 917, 921 (Ind. Ct. App. 2018)), *trans. denied*.

[21] But judicial review under the AOPA "is available only to those who have standing" under the Act. *Ind. Ass'n of Beverage Retailers, Inc. v. Ind. Alcohol and Tobacco Comm'n*, 836 N.E.2d 255, 257 (Ind. 2005). Indiana Code Section 4-21.5-5-3 governs AOPA standing and provides, in relevant part:

> (a) The following have standing to obtain judicial review of an agency action:
>
> > (1) A person to whom the **final agency action** is specifically directed.
> >
> > (2) A person who was a party to the proceedings of the ultimate authority that led to the **final agency action**, including the agency whose order was under review in the proceeding.
> >
> > (3) A person eligible for standing under a law applicable to the **final agency action**.
> >
> > (4) A person otherwise aggrieved or adversely affected by the **final agency action**.

(b) A person has standing under subsection (a)(4) only if:

> (1) the final agency action has prejudiced or is likely to prejudice the interests of the person;

> (2) the person:

>> (A) was eligible for an initial notice of an order or proceeding under this article, was not notified of the order or proceeding in substantial compliance with this article, and did not have actual notice of the order or proceeding before the last date in the proceeding that the person could object or otherwise intervene to contest the agency action; or

>> (B) was qualified to intervene to contest an agency action under IC 4-21.5-3-21(a), petitioned for intervention in the proceeding, and was denied party status;

> (3) the person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

> (4) a judgment in favor of the person would substantially eliminate or redress the prejudice to the person caused or likely to be caused by the final agency action.

(Emphasis added).

[22]    Standing, thus, requires a "final agency action." That term is defined by the AOPA as "(1) the entry of an **order** designated as a final order under this

article; or (2) any **other agency action** that disposes of all issues in a proceeding for all parties after the exhaustion of all available administrative remedies concerning the action."  Ind. Code § 4-21.5-1-6 (emphasis added).

[23]　"[O]rder" and "agency action" are also defined by the AOPA.  "Agency action" is defined as

> (1) The whole or a part of an order.
>
> (2) The failure to issue an order.
>
> (3) An agency's performance of, or failure to perform, any other duty, function, or activity under this article.[9]

Ind. Code § 4-21.5-1-4.  "Order" is defined as:

> agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons. . . .[10]

Ind. Code § 4-21.5-1-9.[11]

---

[9] The phrase "duty, function, or activity under this article" appears to refer to the procedural duties imposed by the AOPA.  *See* Ind. Code § 4-21.5-2-1 (providing that the AOPA "creates minimum procedural rights and imposes minimum procedural duties").  The administration of the IERA2 program is not a duty, function or activity imposed "**under this article**"—the AOPA.  *Cf. Ind. Dep't of Env. Mgmt. v. Raybestos Products Co.*, 897 N.E.2d 469, 474 (Ind. 2008)*, corrected on reh'g,* 903 N.E.2d 471 (Ind. 2009).

[10] The definition further provides that an order includes "(1) a license; or (2) a determination under IC 4-21.5-3-6(a)(3) [hospital reimbursement] or IC 4-21.5-3-6(a)(4) [audit findings]."

[11] The use of "agency action" in defining "order" and the use of "order" in defining "agency action" creates confusion.  We encourage our General Assembly to clarify these definitions.  Despite this confusion, this

[24]     It is apparent from these definitions that, to have standing for judicial review under the AOPA, the plaintiff must be challenging an agency "order" as that term is defined. *See Indianapolis Downs, LLC v. Ind. Horse Racing Comm'n*, 827 N.E.2d 162, 168 (Ind. Ct. App. 2005); *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 930 (Ind. Ct. App. 1998), *trans. denied*. "When a statutory term has been defined by the General Assembly, 'we are bound by its definition.'" *Loomis v. Ace Am. Ins. Co.*, 244 N.E.3d 908, 914 (Ind. 2024) (quoting *WTHR-TV v. Hamilton Se. Schs.*, 178 N.E.3d 1187, 1191 (Ind. 2022)). This case, thus, turns on whether the termination of the IERA2 program constitutes an "order" under the AOPA.

[25]     Orders are often contrasted with rules. An order "operates retrospectively upon a particular individual or circumstance" whereas a rule "involves an element of generality and operates prospectively upon a class of individuals."[12] *Indianapolis Downs*, 827 N.E.2d at 168 (quoting *Miller Brewing Co. v. Bartholemew Cnty. Beverage Co., Inc.*, 674 N.E.2d 193, 202 (Ind. Ct. App. 1996), *trans. denied*). It is helpful to think of an "order" as similar to an adjudication. *See Miller Brewing Co.*, 674 N.E.2d at 202 (noting that "the adjudicatory function of an agency . . .

---

Court's caselaw establishes "order" as the key phrase. *See Indianapolis Downs, LLC v. Ind. Horse Racing Comm'n*, 827 N.E.2d 162, 168 (Ind. Ct. App. 2005); *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 930 (Ind. Ct. App. 1998), *trans. denied*.

[12] Administrative rules are governed by the Administrative Rules and Procedures Act. *See* Ind. Code article 4-22. Here, there is no argument that IHCDA's termination of the IERA2 program constitutes a rule, and we do not address that potential issue.

results in administrative orders") (citing *Ind. Dep't of Env. Mgmt. v. AMAX, Inc.*, 529 N.E.2d 1209, 1212 (Ind. Ct. App. 1988)).

[26] This Court addressed whether an agency determination constituted an "order" in *Smith*, 701 N.E.2d 926. In that case, Smith attempted to redeem his winning five-dollar lottery ticket from the State Lottery Commission ("Lottery") after the sixty-day redemption period had expired. The Lottery denied his ticket.

[27] On appeal, the issue was whether the Lottery's refusal constituted an "order" subject to the AOPA. *Id*. at 930. The Court held:

> [T]he Lottery's denial of [Smith's] request to redeem his ticket operated "retrospectively upon events which had already occurred," *Bradley* [*v. Bankert*], 616 N.E.2d [18,] 22 [(Ind. Ct. App. 1993), *trans. denied*], and determined "the legal rights . . . of one or more specific persons." I.C. § 4-21.5-1-9. Smith wanted his prize and went to the Lottery office to demand it. In contesting the application of the Lottery's rule to his individual case, Smith is actually contesting an order.

*Id*. at 930-31.

[28] We addressed a similar issue in *Indianapolis Downs, LLC*, 827 N.E.2d 162. In that case, the Indiana Horse Racing Commission ("IHRC") was tasked with allocating a subsidy between two horse racing tracks, Hoosier Park and Indianapolis Downs. Instead of allocating the subsidy equally between the racing tracks, IHRC allocated a greater portion to Hoosier Park.

[29] On appeal, this Court held that the IHRC's determination constituted a reviewable order under the AOPA. Relying on *Smith*, the Court explained that there was "no dispute" that Indiana Downs had "a legal right or interest to at least some of the funds; rather, the dispute revolves around which distribution formula . . . applies." *Id*. at 168. Furthermore, the IHRC's decision had a "retrospective application" because it determined the portion of the subsidy to which each racing track was entitled. *Id*. at 169.

[30] Here, the trial court found that "the applicable 'agency order' was the decision to shut down IREA2 by the end of March 2025." Appellant's App. Vol. II p. 46. We, however, conclude that the IHCDA's termination of the IERA2 program is not an "order" reviewable under the AOPA. This is not a case where IHCDA denied Plaintiffs rental assistance under an operating program. That would be an adjudication of "particular applicability" to "one (1) or more specific persons." Ind. Code § 4-21.5-1-9. Rather, the termination of the IERA2 program as a whole here is a matter of general applicability that applies "prospectively." *Indianapolis Downs*, 827 N.E.2d at 168 (internal quotation omitted).

[31] *Smith* and *Indianapolis Downs* are distinguishable. Those cases involved the application of a policy or program to a specific party, not the termination of a program altogether. Furthermore, the plaintiffs in those cases had a legal right to or interest in the funds. Here, however, IHCDA had yet to determine whether Plaintiffs were entitled to rental assistance when the IERA2 program closed.

Because Plaintiffs are not contesting an "order" as that term is defined by the AOPA, Plaintiffs lack standing under the AOPA and cannot succeed under their AOPA claims. As such, the trial court's finding that Plaintiffs were likely to success on their AOPA claims is erroneous. The trial court's grant of a preliminary injunction based upon Plaintiff's AOPA claims constitutes an abuse of discretion, and the preliminary injunction must be reversed.

## II. The trial court abused its discretion by certifying a class action.

IHCDA also challenges the trial court's certification of the class. We review a trial court's class action certification ruling for an abuse of discretion. *Individual Members of Medical Licensing Bd. of Ind. v. Anonymous Plaintiff 1*, 233 N.E.3d 416, 442 (Ind. Ct. App. 2024) (citing *LHO Indianapolis One Lessee, LLC v. Bowman,* 40 N.E.3d 1264, 1269 (Ind. Ct. App. 2015)), *trans. denied*; *accord Gierek v. Anonymous 1*, 250 N.E.3d 378, 384 (Ind. 2025).

IHCDA argues that class actions are impermissible under the AOPA and that the trial rules governing class actions do not apply. We need not address that argument because, even if the trial rules apply, we conclude that the trial court's certification of the class was an abuse of discretion.

We first clarify that our conclusion regarding the preliminary injunction order is not dispositive of the class action issue. Class certification "'does not require a potential class representative to show a likelihood of success on the merits in order to have his claim certified as a class action.'" *Gierek*, 250 N.E.3d at 398

(quoting *N. Ind. Pub. Serv. Co. v. Bolka*, 693 N.E.2d 613, 617 (Ind. Ct. App. 1998), *trans. denied*).

[36] Instead, "[a] party requesting class certification must prove that the proposed class meets all of the requirements of Ind. T.R. 23(A) and at least one of the requirements of T.R. 23(B)."[13] *Bowman*, 40 N.E.3d at 1269 (citing *Wal-Mart Stores, Inc. v. Bailey,* 808 N.E.2d 1198, 1201 (Ind. Ct. App. 2004), *trans. denied*).

---

[13] Trial Rule 23 provides, in relevant part:

> **(A) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(B) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of:
>
> > (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
>
> > (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

[37] Furthermore, "[a]long with the express requirements of Trial Rule 23, Indiana courts have imposed an implicit 'definiteness' requirement for class action certification." *Individual Members of Medical Licensing Bd. of Ind.*, 233 N.E.3d at 443 (quoting *Bowman*, 40 N.E.3d at 1269) (examining the definiteness requirement of a class certified under Trial Rule 23(B)(2)). "'A properly defined class is necessary at the onset because a judgment in a class action has a *res judicata* effect on absent class members.'" *Id.* (quoting *LHO*, 40 N.E.3d at 1269).

[38] We conclude that the trial court abused its discretion by certifying the class because, as currently defined, the class is not sufficiently definite. The class certified by the trial court consists of:

> All Indiana residents who, on March 26, 2025, were members of **eligible households, as that term is defined in section 3201(f)(2) of the American Rescue Plan Act of 2021**, Pub. L. No. 117-2, which had not received 18 months of emergency rental assistance in total under ERA1 and ERA2.

Appellants' App. Vol. II p. 52 (emphasis added). ARPA defines an "eligible household" as:

---

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

a household of 1 or more individuals who are obligated to pay rent on a residential dwelling and with respect to which the eligible grantee [here, the State of Indiana[14]] involved **determines** that--

> (A) 1 or more individuals within the household has--
>
>> (i) qualified for unemployment benefits; or
>>
>> (ii) experienced a reduction in household income, incurred significant costs, or experienced other financial hardship during or due, directly or indirectly, to the coronavirus pandemic;
>
> (B) 1 or more individuals within the household can demonstrate a risk of experiencing homelessness or housing instability; and
>
> (C) the household is a low-income family (as such term is defined in section 1437a(b) of Title 42[)].

15 U.S.C. § 9058c(f)(2) (emphasis added).

[39] Thus, pursuant to ARPA, there are several criteria that inform whether a household qualifies as "eligible," but the ultimate determination is committed to the grantee, here the State through IHCDA. Because the IERA2 program

---

[14] *See* 15 U.S.C. § 9058c(f)(1) (defining "eligible grantee" as: "(A) The 50 States of the United States and the District of Columbia"; "(B) A unit of local government (as defined in [section (f)(5)]); or "(C) The Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Commonwealth of the Northern Mariana Islands, and American Samoa").

has been terminated, this determination can no longer be made. The trial court, thus, abused its discretion by certifying the class as currently defined. In the event that Plaintiffs wish to reattempt class certification, we note that the class "may be redefined in order to sustain the lawsuit." *Bailey*, 808 N.E.2d at 1207 (citing T.R. 23(C)(1); *Independence Hill Conservancy Dist. v. Sterley*, 666 N.E.2d 978, 982 (Ind. Ct. App. 1996)).

## Conclusion

[40] Because Plaintiff's lack standing under the AOPA, the trial court abused its discretion by granting the preliminary injunction. Additionally, the trial court abused its discretion by certifying the class as currently defined. Accordingly, we reverse and remand.

[41] Reversed and remanded.

Felix, J., concurs in result with separate opinion.

Vaidik, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANTS

Theodore E. Rokita
Attorney General of Indiana

James A. Barta
Solicitor General

John M. Vastag
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Fran Quigley
Health and Human Rights Clinic
Indiana University McKinney School of Law
Indianapolis, Indiana

Ian R. Bensberg
CohenMalad, LLP
Indianapolis, Indiana

**Felix, Judge, concurring in result.**

[42] I concur in result but respectfully disagree with Judge Tavitas's analysis. First, as to the preliminary injunction, Plaintiffs do not have a reasonable likelihood of success at trial because their AOPA claims are challenges to a rule rather than an order. Second, as to the class certification, the plain language of the AOPA does not allow for classwide relief.

## 1. The Trial Court Erred by Issuing the Preliminary Injunction

[43] The IHCDA contends the trial court erred by granting Plaintiffs' motion for a preliminary injunction. "A preliminary injunction 'is an extraordinary equitable remedy that should be granted with caution.'" *Willow Haven on 106th St., LLC v. Nagireddy*, 252 N.E.3d 418, 422 (Ind. 2025) (quoting *Combs v. Daniels*, 853 N.E.2d 156, 160 (Ind. Ct. App. 2006)). In deciding whether to grant a motion for a preliminary injunction, the trial court must make special findings of fact. Ind. Trial Rule 52(A), 65(D). Therefore, this court will "not set aside the findings or judgment unless clearly erroneous," *id.* 52(A); that is, this court "must determine 'whether the evidence supports the findings and, if so, whether the findings support the judgment,'" *Willow Haven*, 252 N.E.3d at 422 (quoting *Town of Linden v. Birge*, 204 N.E.3d 229, 233 (Ind. 2023)). This court reviews the trial court's legal conclusions de novo, *Willow Haven*, 252 N.E.3d at 422 (citing *Birge*, 204 N.E.3d at 234), and this court reviews the trial court's ultimate determination of whether to grant or refuse the preliminary injunction for an "abuse of discretion, which 'occurs if the trial court's decision was against the

logic and effect of the facts and circumstances before the court,'" *id.* (internal citations omitted).

[44] To obtain a preliminary injunction, Plaintiffs had to show that (1) they had a reasonable likelihood of success at trial; (2) their remedies at law are inadequate, meaning they will suffer irreparable harm without an injunction; (3) the potential injury without an injunction outweighs the potential harm from an injunction; and (4) issuing the injunction will not disserve the public interest. *See Willow Haven*, 252 N.E.3d at 422 (citing *Ind. Fam. & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind. 2002)).

[45] The IHCDA challenges the trial court's issuance of the preliminary injunction on three main bases: (1) the AOPA does not authorize preliminary injunctions, (2) Plaintiffs did not show they had a reasonable likelihood of success at trial, and (3) Plaintiffs did not show that equitable considerations and the public interest justify the preliminary injunction. Assuming without deciding that the AOPA does not preclude a trial court from issuing a preliminary injunction, Plaintiffs failed to show they have a reasonable likelihood of success at trial. In particular, Plaintiffs do not have a reasonable likelihood of success at trial because the IHCDA's closing of IERA2 is not a judicially reviewable action.[15]

---

[15] Because the trial court analyzed only the IHCDA's closure of IERA2 and issued the preliminary injunction on only that basis—as opposed to analyzing the IHCDA's denials of Plaintiffs' IERA2 applications—I do not address Plaintiffs' likelihood of success in challenging those denials to the extent Plaintiffs have made such claims.

Plaintiffs' AOPA claims in their amended complaint and their amended request for a preliminary injunction challenge only the IHCDA's decision to shut down IERA2.[16] In granting the preliminary injunction, the trial court concluded "the applicable 'agency order'" that Plaintiffs were challenging was not the individual denials of their IERA2 applications but "the decision to shut down IREA2 [sic] by the end of March 2025, which was made on March 17 and 18, 2025." Appellants' App. Vol. II at 46. The IHCDA maintains that its decision

---

[16] The amended complaint reads in relevant part as follows:

> 7. *Plaintiffs bring this action to put a stop to IHCDA's unlawful termination of the program* and to ensure that already appropriated congressional funding continues to flow to the Hoosier households that need it most.
>
> * * *
>
> 75. IHCDA's decision to *terminate the IERA2 program* was arbitrary and capricious; contrary to constitutional right, power, privilege, or immunity; and in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.
>
> 76. IHCDA's decision to *terminate the IERA2 program* was arbitrary and capricious . . . .
>
> 77. IHCDA's decision to *terminate the IERA2 program* was contrary to constitutional right, power, privilege, or immunity . . . .
>
> 78. IHCDA's decision to *terminate the IERA2 program* was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .
>
> * * *
>
> 81. IHCDA's decision to *terminate the IERA2 program* denied Plaintiffs the equal privileges and immunities to which they are entitled . . . .
>
> * * *
>
> 85. IHCDA's decision to *terminate the IERA2 program* unlawfully interfered with [the] right [to maintain a household] without sufficient basis or reason.
>
> * * *
>
> 88. IHCDA's decision to *terminate the IERA2 program* violated the Open Door Law . . . .
>
> 89. Plaintiffs ask that the Court . . . [p]reliminarily and permanently enjoin Defendants from unlawfully *terminating the IERA2 program* . . . .

Appellants' App. Vol. II at 114–25 (emphases added). Similarly, the amended motion for preliminary injunction asked the trial court in relevant part "to enjoin Defendants' unlawful *termination of the IERA2 program*." *Id.* at 127 (emphasis added).

to shutter IERA2 was not an order but a rule of general application, for which Plaintiffs are not entitled to judicial review.

[47] An "order" is "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." Ind. Code § 4-21.5-1-9. An order operates "retrospectively upon events that have already occurred." *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 930 (Ind. Ct. App. 1998) (quoting *Bradley v. Bankert*, 616 N.E.2d 18, 22 (Ind. Ct. App. 1993), *trans. denied*), *trans. denied*. By contrast, a "rule" is "the whole or any part of an agency statement of general applicability" that (1) "has or is designed to have the effect of law" and (2) "implements, interprets, or prescribes" either "law or policy" or "the organization, procedure, or practice requirements of an agency." I.C. § 4-21.5-1-14. A rulemaking function "involves an element of generality," "operates on a class of individuals," and "has a 'prospective effect.'" *Smith*, 701 N.E.2d at 930 (quoting *Ind. Dep't of Envtl. Mgmt. v. AMAX, Inc.*, 529 N.E.2d 1209, 1212 (Ind. Ct. App. 1988)).

[48] In *Smith v. State Lottery Commission of Indiana*, 701 N.E.2d 926 (Ind. Ct. App. 1998), this court dealt with a similar dispute regarding an order versus a rule. Tom Smith attempted to redeem a winning lottery ticket, but he was not allowed to do so because the game had ended and the deadline to claim his prize had passed. *Id.* at 928. Smith sued the State Lottery Commission of Indiana. The lawsuit was dismissed in part because Smith had not exhausted administrative remedies as required by the AOPA. *Id.* On appeal, Smith

argued in relevant part that the Lottery's denial of his request to redeem his ticket was a Lottery rule of general application, so he did not need to exhaust administrative remedies. *Id.* at 930. This court disagreed. The Lottery's decision to deny Smith's request to redeem his ticket "operated 'retrospectively upon events which had already occurred' . . . and determined 'the legal rights . . . of one or more specific persons, '" so that denial was an order. *Id.* at 930–31 (second alteration in original) (internal citations omitted). In contrast, the Lottery's decision to end the game on a certain date and to preclude redemption of prizes after a certain date was a rule. *Id.* at 930.

[49] Like the Lottery's decision to set end dates for a game and the game's redemption period in *Smith*, the IHCDA's decision to shut down IERA2 was a rule that cannot be judicially reviewed. The trial court therefore erred in concluding that the IHCDA's shuttering of IERA2 was an order of which Plaintiffs could seek judicial review, so it also erred by issuing a preliminary injunction on that basis.[17]

---

[17] To the extent this conclusion necessarily means that the Plaintiffs lacked standing pursuant to Indiana Code section 4-21.5-5-3, that is not an issue raised on appeal, so the parties have waived any such claim for our review. *See Expert Pool Builders, LLC v. Vangundy*, 224 N.E.3d 309, 313 (Ind. 2024) (citing *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013)) ("Generally, we limit appellate review to arguments the parties first presented to the trial court."); *Burcham v. Metro. Bd. of Zoning Appeals Div. I of Marion Cnty.*, 883 N.E.2d 204, 210–11 (Ind. Ct. App. 2008) (quoting *Family Dev., Ltd. v. Steuben Cnty. Waste Watchers, Inc.*, 749 N.E.2d 1243, 1255 n.10 (Ind. Ct. App. 2001)) (disapproving of precedent holding that an appellate court may address standing sua sponte); *see, e.g.*, *Lewis v. Putnam Cnty. Sheriff's Dep't*, 125 N.E.3d 655, 658 (Ind. Ct. App. 2019) (quoting *Everroad v. State*, 590 N.E.2d 567, 569 (Ind. 1992)) (concluding an appellate court should not sua sponte invoke lack of standing in resolving an unlawful search and seizure claim).

## 2. The Trial Court Erred by Certifying the Class

The IHCDA next challenges the trial court's certification of the class. This court "typically review[s] a class-certification ruling for an abuse of discretion," but if that certification turns on a legal question, this court reviews it de novo. *Gierek v. Anonymous 1*, 250 N.E.3d 378, 384 (Ind. 2025) (citing *Budden v. Bd. Of Sch. Comm'rs of City of Indianapolis*, 698 N.E.2d 1157, 1160 (Ind. 1998)).

The IHCDA specially contends that the trial court erred by certifying the class for three reasons: (1) the AOPA does not authorize class actions or classwide relief, (2) the certified class is insufficiently definite and insufficiently cohesive, and (3) classwide relief is unavailable. Because the IHCDA's first argument is dispositive, I do not address the merits of the other two.

A class action is a procedural device, *Mellowitz v. Ball State Univ.*, 221 N.E.3d 1214, 1225 (Ind. 2023) (citing *State ex rel. Firestone v. Parke Circuit Court*, 621 N.E.2d 1113, 1114 (Ind. 1993)), *reh'g denied* (Jan. 16, 2024), that "authorizes a single person or a small group of people to represent the interests of a larger group," *id.* at 1228 (quoting *Class Action*, Black's Law Dictionary (11th ed. 2019)). The General Assembly can "alter[] class action procedures to address substantive concerns." *Id.* at 1227 (citing I.C. § 34-13-5-2).

The AOPA provides the "*exclusive* means for judicial review of an agency action," I.C. § 4-21.5-5-1 (emphasis added), and it does not contemplate class actions, *see* I.C. §§ 4-21.5-5-1 to -16. In fact, the plain text of the AOPA limits it to individualized—not classwide—judicial review of an agency action. As

previously discussed, and "order" is "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of *one (1) or more **specific** persons*." I.C. § 4-21.5-1-9 (emphases added). "'Person' means an *individual*, agency, political subdivision, partnership, corporation, limited liability company, association, or other entity of any character." *Id.* § 4-21.5-1-11 (emphasis added). Likewise, a "party" is "(1) *a person to whom the agency action is specifically directed*; or (2) *a person expressly designated in the record of the proceeding* as a party to the proceeding." *Id.* § 4-21.5-1-10 (emphases added). To have standing to seek judicial review of an agency action, the person seeking such review must be (1) a "person to whom the final agency action is *specifically directed*"; (2) a "person who was *a party to the proceedings* of the ultimate authority that led to the final agency action, including the agency whose order was under review in the proceeding"; (3) a "person eligible for standing under a law applicable to the final agency action"; or (4) a "person otherwise aggrieved or adversely affected by the final agency action." *Id.* § 4-21.5-5-3(a) (emphases added). At first blush, this last option for standing appears to lend itself to classwide relief. However, the requirements to obtain standing under that provision would require the prospective class members to establish, among other particularized requirements, that the final agency action under review "has prejudiced or is likely to prejudice the interests of the person," *id.* § 4-21.5-5-3(b)(2)(A), that is, of each class member.

[54] These AOPA provisions demonstrate that our General Assembly intended judicial review of an agency action to include only those persons to whom the

reviewable action applies; it did not intend to include those persons to whom an order does not apply. *See Mellowitz*, 221 N.E.3d at 1221, 1224 (quoting *Church v. State*, 189 N.E.3d 580, 588, 590 (Ind. 2022)) (holding that if a statute establishes rights and responsibilities or "predominantly furthers public policy objectives involving matters other than the orderly dispatch of judicial business, it is substantive" and supersedes our Trial Rules). I therefore must conclude that classwide relief is not available when seeking judicial review of an agency action under the AOPA, so the trial court abused its discretion by certifying the class in this case.

[55] For these reasons, I concur and would also reverse the trial court's preliminary injunction and class certification decisions.

**Vaidik, Judge, dissenting.**

[56] I respectfully dissent. In reversing the preliminary injunction, my colleagues conclude that Plaintiffs are challenging the termination of the IERA2 program and that this termination isn't an "order" that can be challenged under AOPA. Ultimately, however, Plaintiffs are challenging the denials of their applications for rental assistance. And those denials fall squarely within the definition of "order": "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." Ind. Code § 4-21.5-1-9. To be sure, Plaintiffs' claims implicate the broader decision to terminate the IERA2 program, but Plaintiffs aren't simply disgruntled citizens challenging that termination in the abstract or purely out of principle. They are struggling Hoosiers who would benefit greatly from the rental assistance that Congress intended and funded but who had their applications denied. Those denials were "orders" under AOPA.[18]

[57] As for the class certification, my colleagues offer different reasons for reversing. Judge Tavitas concludes that the proposed class is not "sufficiently definite"

---

[18] In addition to concluding that Plaintiffs are only challenging the termination of the IERA2 program, Judge Felix posits that the termination of the program was a "rule" as defined by Indiana Code section 4-21.5-1-14. But as Judge Tavitas notes, IHCDA doesn't argue that its termination of the program was a "rule." And for good reason. A "rule" must be duly promulgated through the rulemaking process set out in the Administrative Rules and Procedures Act (ARPA), Indiana Code article 4-22. *Villegas v. Silverman*, 832 N.E.2d 598, 608 (Ind. Ct. App. 2005), *reh'g denied*, *trans. dismissed*; *Indianapolis Downs, LLC v. Ind. Horse Racing Comm'n,* 827 N.E.2d 162, 168 (Ind. Ct. App. 2005); *Chicagoland Christian Village, Inc. v. Sullivan*, 671 N.E.2d 174, 177 (Ind. Ct. App. 1996). Here, the decision to shut down the IERA2 program didn't go through the ARPA rulemaking process. The program was shut down via email.

because IHCDA can no longer determine who is eligible for rental assistance under the IERA2 program. And why is IHCDA unable to determine who is eligible for rental assistance under the IERA2 program? Because IHCDA terminated the program. This reasoning strikes me as circular. In essence, the majority says that IHCDA can't be made to defend a class action for terminating the IERA2 program **because IHCDA terminated the IERA2 program**. I would not allow IHCDA to have its cake and eat it, too. And in any event, the trial court certified the class under Indiana Trial Rule 23(B)(2). As Plaintiffs note, definiteness is less important under that part of the rule. *See Frank v. Walker*, 196 F. Supp. 3d 893, 903-04 (E.D. Wisc. 2016), *aff'd in part and rev'd in nonrelevant part sub nom. Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020).

[58] Judge Felix, on the other hand, concludes that a class action is never permissible in an AOPA case because AOPA doesn't explicitly authorize such actions. But AOPA also doesn't explicitly **bar** such actions. Therefore, I would not impose a blanket prohibition on class actions in AOPA cases. Instead, I would trust our trial courts, in the first instance, to apply Trial Rule 23 and determine whether a class action is appropriate in a particular AOPA case. Plaintiffs offer several hypotheticals that demonstrate the problem with a blanket prohibition on class actions:

> According to the agency, the Bureau of Motor Vehicles could arbitrarily and capriciously, or unconstitutionally, strip every Hoosier driver of her driver's license; the Medical Licensing Board could unlawfully strip every doctor of her license to practice medicine; every license issued in this state to practice

dentistry, to hunt, or to serve alcohol could be unlawfully annulled by the Board of Dentistry, the Department of Natural Resources, or the Alcohol and Tobacco Commission—and the *only* remedy authorized by the statute designed to protect and implement Hoosiers' constitutional right to judicial review would be thousands or millions of individual petitions, each satisfying AOPA's preconditions, and each litigated to final judgment. That is an unthinkable result.

Appellees' Br. pp. 37-38 (citation and footnote omitted). Tellingly, IHCDA doesn't respond to this argument.

[59] For these reasons, I cannot join my colleagues in reversing the trial court's discretionary decisions to grant the preliminary injunction and certify the class.